UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------x

SOURCE VAGABOND SYSTEMS, LTD.,

                    Plaintiff,

          -against-

HYDRAPAK, INC.,

                 Defendant.

                        x

Case No.:  11 CIV 5379-CM-JLC

ECF CASE

ELECTRONICALLY FILED

---

**HYDRAPAK INC.'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**

---

James E. Hough
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
JHough@mofo.com

Eric S. Walters (admitted pro hac vice)
Christopher L. Robinson (admitted pro hac vice)
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 813-5600
Facsimile: (650) 494-0792
EWalters@mofo.com
ChristopherRobinson@mofo.com

*Attorneys for Defendant Hydrapak, Inc.*

## I.    INTRODUCTION

Source Vagabond Systems, Ltd. ("Source Vagabond") has accused Hydrapak, Inc.'s ("Hydrapak") Reversible Reservoir II™ product of infringing at least claim 1 of U.S. Patent No. 7,648,276 ("the '276 Patent"), either literally or under the doctrine of equivalents.  Claim 1 is the only independent claim in the patent.  Patent infringement is the sole cause of action in this lawsuit.  Hydrapak respectfully requests summary judgment of non-infringement with respect to Source Vagabond's claim that Hydrapak has infringed the '276 Patent.

This motion turns on a pure question of law:  Does the accused product have a "slot . . . narrower than the diameter of a rod" within the meaning of claim 1 of the '276 Patent?  The only "fact" needed to resolve this question is incontrovertible and evident to the naked eye.  The "slot" assumed to exist here is wider, not narrower, than the diameter of the only element that could even arguably constitute a rod.  This fact is all the Court needs to resolve the question of literal infringement and infringement under the doctrine of equivalents.

The technology at issue is simple.  Claim 1 of the '276 Patent recites a sealable flexible liquid container system comprising "a flexible liquid container," "a rod," and "a sealer . . . with a longitudinal slot . . . , the slot being narrower than the diameter of the rod, so that the sealer is only to be slidingly mounted sideways over the rod."

Hydrapak is entitled to judgment as a matter of law because there is no genuine dispute that the accused product has an element (a "slider gap") which, if assumed to be a "slot," is wider than the diameter of the only element that could arguably constitute "a rod."  The accused product, therefore, does not literally infringe asserted claim 1 of the '276 Patent.  The accused product also does not infringe asserted claim 1 of the '276 Patent under the doctrine of equivalents as a matter of law because prosecution history estoppel and claim vitiation preclude its application here.

There are many additional claim limitations required by the '276 Patent that are missing from the Reversible Reservoir II.  There are also many additional non-infringement and other defenses which would entitle Hydrapak to summary judgment.  Hydrapak, however, has chosen to limit this motion to a single issue amenable to early summary judgment to facilitate an efficient and early disposition of a patent infringement lawsuit that is baseless and never should have been filed.

## II.   QUESTIONS PRESENTED

1.   Whether the claim limitation "slot being narrower than the diameter of the rod" in claim 1 of the '276 Patent reads on devices having a slot wider than the diameter of the "rod."

2.   Whether the Reversible Reservoir II has a "slot . . . narrower than the diameter of the rod" where the alleged "slot" is 4.2 mm wide (or alternatively 4.8 mm wide, depending on the product model), and the diameter of the only element in the accused product that could conceivably constitute "a rod" is 3.0 mm in diameter.

3.   Whether Source Vagabond may rely on the doctrine of equivalents to expand the scope of the '276 Patent to encompass devices with a slot wider than the diameter of a rod where (A) the inventor disavowed devices with a slot wider than the diameter of a rod during prosecution and (B) application of the doctrine of equivalents would entirely vitiate the claim term "slot being narrower than the diameter of the rod."

## III.   STATEMENT OF FACTS

### A.   Overview of the Claimed Subject Matter in the '276 Patent

Mr. Yoram Gill filed and began prosecuting the application that issued as the '276 Patent on November 20, 2001.  The application spent about eight years in prosecution.  Only a single independent claim (claim 1) emerged when the '276 Patent issued on January 19, 2010.

Claim 1 recites:

A sealable flexible liquid container system comprising:

**a flexible liquid container** having a cavity for receiving liquids, said cavity formed of two films having the majority of their perimeter fused, and a portion of the perimeter unfused so as to present a lateral opening for filling the container with liquids, and a liquid dispensing outlet;

**a rod** having a first end and a second end, fixedly attached to the container laterally across the lateral opening of the flexible container so that a portion of the container adjacent the lateral opening can be folded over the rod and substantially overlap an adjacent portion of the container; **and**

**a sealer** comprising an elongated rigid member having two opposite sides along which a hollow cavity is extended **with a longitudinal slot** wherein said slot is adapted to accommodate said two films, wherein the sealer is provided with an opening on at least one of the opposite sides with a broadening for inserting an end of the rod into the cavity when the portion of the container is folded over the rod into the hollow passage**, the slot being narrower than the diameter of the rod, so that the sealer is only to be slidingly mounted sideways over the rod**.

(Walters Decl. Ex. A at claim 1 (emphasis added).)

Figures 4-6 (duplicated below) illustrate one embodiment described in the patent.



Figure 4

Figure 5

Figure 6

In this embodiment, the rod (*114*) is attached laterally across the lateral opening of the container (*102*).  (*See id.* at 8:34-38.)  "A separated sealer *116* is provided . . . . compris[ing] an elongated member *118* having substantially horse-shoe-shaped cross-section and is adapted to internally accommodate rod *114*."  (*Id.* at 8:38-41.)  "Rod *114* can be inserted or pulled out from the interior of elongated member *118* <u>only</u> by sliding the rod through the side openings of the internal cavity in elongated member *118*."  (*Id.* at 8:41-44 (emphasis added).)  "The rod's diameter is <u>too large</u> so as to be pulled out through the slot along the internal cavity of the elongated member."  (*Id.* at 8:44-46 (emphasis added).)[1]

The specification contains the following description of one example of the device:

> An example for optimized sizes of a container and a corresponding sealer are: for a container having thickness of approximately 0.9 mm (the thickness of the two films), a sealer having a slot of about 3 mm, a rod of about 3 mm in diameter and an inner cylinder diameter of about 11.5 mm will adapt to sealingly block the passage of liquid from the liquid receiving cavity through the fold while at the same time the insertion of the fold into the cylinder is easy.

(Walters Ex. A at 9:50-10:10; *see also id.* at 7:60-8:5.)

Although the above example teaches that the slot (3 mm) may equal the diameter of the rod (3 mm), Mr. Gill unequivocally disavowed devices with a slot equal to (or wider than) the diameter of the rod during prosecution, as explained in detail in the next section.

**B.    Prosecution History of the '276 Patent**

Claim 1 as originally filed (pending as claim 13 during prosecution) was much broader than the claim-as-issued.  Notably, the "slot" recited in the claim-as-filed had no upper size limit:

---

[1] The patent also contains drawings of a different embodiment of the system in which the rod is attached to a cap located on one of the sealer's ends.  (Walters Decl. Ex. A at 7:5-14.)  This embodiment was disclaimed in prosecution.

> A sealing device adapted to seal a flexible liquid container system…comprising:
>
> a rod…and
>
> a sealer…with a longitudinal slot…wherein said sealer is slidingly mountable over said rod…and <u>wherein the slot is not narrower than the total thickness of the folded portion of the container and the adjacent portion when inserted through the slot</u> . . . .

(Walters Decl. Ex. B at 024-025.)

Mr. Gill narrowed this claim scope during prosecution in response to the Examiner's rejection of pending claim 13 as anticipated by Dikeman (US 5,931,456), and as obvious over Dikeman in view of Senanayake (WO 92/16424).  (*See id*. at 054-066, 078-091, 098-108.)

According to the Examiner:

> Dikeman disclose[d] a sealable flexible liquid container system comprising…a rod *70* having a first end (unnumbered) and a second end (*82*) attached to the container laterally across the lateral opening of the flexible container so that a portion of the container adjacent the lateral opening can be folded over the rod…; and a sealer…comprising an elongated rigid member…with a longitudinal slot…wherein said slot is adapted to accommodate said two films,…wherein said sealer is slidingly mountable over said rod (in a horizontal direction),…and <u>wherein the slot is not narrower than the total thickness of the folded portion of the container and the adjacent portion when inserted through the slot</u> . . . whereby when…the sealer is slidingly mounted over the folded portion of the container and the rod, liquid in said container is prevented from passing through the lateral opening.

(*Id*. at 070-071.)

To overcome Dikeman and Senanayake, Mr. Gill amended and narrowed pending claim 13 to recite a sealer with "an opening <u>in the form of substantially parallel lips . . . the distance between the lips allowing the sealer to be mounted only slidingly sideways over the rod</u>."  (*Id*. at 081.)  Mr. Gill argued that this limitation distinguished his alleged invention over Dikeman and Senanayake:

> [I]t is evident that both Dikeman and Senanayake suggest a sealer
> that is pressed against the rod over its entire length, snapping it
> into position (Dikeman) or holding it by a third element
> (Senanayake).
>
> Thus, neither Dikeman nor Senanayake, alone or in combination,
> teach or suggest every element of [pending claim 13].

(*Id*. at 089.)

The Examiner stated in response that pending claim 13 "appear[s] to avoid the art of record," but rejected the claim as failing to comply with written description requirement by introducing new matter ("substantially parallel lips").  In response, Mr. Gill amended the claim once more to recite a "slot . . . narrower than the diameter of the rod, so that the sealer [is] only to be slidingly mounted sideways over the rod."  (*Id*. at 101 (emphasis added).)  The claim issued on January 19, 2010.  (Walters Decl. Ex. A.)

### C.     Hydrapak's Reversible Reservoir II

Hydrapak is a San Francisco Bay Area company that makes and sells the Reversible Reservoir II, a water reservoir used in a variety of sports and outdoor activities, including cycling, running, water sports, and hiking.  (Lyon Decl. ¶ 1; *see also* Hydrapak's Store, http://www.hydrapak.com/store-2/.)  Hydrapak employs about 9 people.  (Lyon Decl. ¶ 1.)

The Reversible Reservoir II is a flexible water reservoir with an innovative slide-seal closure system.  (Lyon Decl. ¶ 2.)  A sample of the Reversible Reservoir II is attached as **Exhibit A** to the Declaration of Matthew J. Lyon filed in support of this motion.  (*Id*.)

The Reversible Reservoir II has a sealing member, called a "slider," with an opening or gap across its longitudinal axis.  (*Id*. ¶ 3.)  The gap is about 4.2 mm wide, or alternatively, about 4.6 mm wide, depending on the product model.  (*Id*. ¶¶ 4-6.)  The slider attaches to six discrete elements, called "catches," located on the outside of two plastic lips that run along each side of the water reservoir's mouth.  (*Id*. ¶ 3.)  The catches guide the arms of the slider along the

container's plastic lips, locking the slider in place and preventing it from detaching from the container. (*Id.*)  The catches have a thickness of about 3.0 mm. (*Id.* ¶ 9.)

One of the Reversible Reservoir's lips contains a small protrusion, called a "lip bulge," on its interior proximal end. (*Id.* ¶ 3.)  The lip bulge is about 3.0 mm in diameter. (*Id.* ¶ 8.) Before the slider is attached to the water reservoir, the plastic lips are folded together, which causes a portion of the container to wrap around the lip bulge. (*Id.*)  The combined thickness of the lip bulge, together with the container wrapped around it, is 4.0 mm for the slider model having a gap of 4.2 mm, or alternatively 4.6 mm for the slider model having a gap of 4.8 mm. (*Id.* ¶ 10.)

### D.    Procedural History

Source Vagabond filed a complaint on August 2, 2011 alleging that Hydrapak's Reversible Reservoir II directly infringed at least claim 1 of U.S. Patent No. 7,648,276 ("the '276 Patent"). (Compl., D.I. 1.)  Source Vagabond also asserted a false marking claim. (*Id.*)  Source Vagabond did not serve Hydrapak with the complaint.

Hydrapak served a Rule 11 motion for sanctions on Source Vagabond on September 16, 2011 based on the frivolousness of its patent infringement and false marking claims, and the improper purpose for which Source Vagabond brought this action, as demonstrated by its improper use of baseless patent infringement claims to intimidate Hydrapak's customers.

On October 6, 2011, Source Vagabond filed an amended complaint withdrawing its false marking claim, but not withdrawing or amending its patent infringement claim. (D.I. 4.)  Source Vagabond served Hydrapak with the amended complaint on October 11, 2011.  Hydrapak served an amended motion for sanctions on Source Vagabond on October 12, 2011.

An initial pretrial conference is currently scheduled for November 3, 2011.  No case scheduling order is currently in place.

## IV.    LEGAL STANDARD

### A.    Summary Judgment

"A party may file a motion for summary judgment at any time until 30 days after the close of all discovery."  Fed. R. Civ. P. 56(b).  "Summary judgment is appropriate in a patent case, as in other cases, when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  *Nike Inc., v. Wolverine World Wide, Inc.*, 43 F.3d 644, 646 (Fed. Cir. 1994).  "In other words, summary judgment may be granted when no 'reasonable jury could return a verdict for the nonmoving party.'"  *Id.*

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party, however, has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial.  The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case.  *See id.* at 325.

The burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial."  *Id.* at 322 (quoting Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### B.    Patent Infringement

"Patent infringement is a two step inquiry.  First, the court must construe the asserted claim. . . .  Second, the court must determine whether the accused product or process contains each limitation of the properly construed claims, either literally or by a substantial equivalent."  *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1356-57 (Fed. Cir. 2005) (internal citation omitted).  "The first step is a question of law, the second is a question of fact."  *Id.*

1.        **Claim Construction**

Claim construction is a question of law.  *Markman v. Westview Instruments, Inc.*, 517

U.S. 370, 372 (1996).  "[T]he words of a claim are generally given their ordinary and customary

meaning."  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (internal quotations

omitted).  "In some cases, the ordinary meaning of claim language as understood by a person of

skill in the art may be readily apparent even to lay judges, and claim construction in such cases

involves little more than the application of the widely accepted meaning of commonly

understood words."  *Id*. at 1314.

"The claims, of course, do not stand alone."  *Id*. at 1315.  "Rather, they are part of a fully

integrated written instrument, consisting principally of a specification that concludes with the

claims."  *Id*. (internal quotations and citation omitted).  "For that reason, claims must be read in

view of the specification, of which they are a part."  *Id*. (internal quotations omitted).  If the

specification reveals "an intentional disclaimer, or disavowal, of claim scope by the inventor,"

then the claims must be read consistent with that limitation.  *Id*. at 1316.

"In addition to consulting the specification," "a court 'should also consider the patent's

prosecution history, if it is in evidence.'"  *Id*. at 1317.  "[T]he prosecution history can often

inform the meaning of the claim language by demonstrating how the inventor understood the

invention and whether the inventor limited the invention in the course of prosecution, making the

claim scope narrower than it would otherwise be."  *Id*.; *see also Chimie v. PPG Indus., Inc.*, 402

F.3d 1371, 1384 (Fed. Cir. 2005) ("The purpose of consulting the prosecution history in

construing a claim is to 'exclude any interpretation that was disclaimed during prosecution.'")

"Although [the Federal Circuit has] emphasized the importance of intrinsic evidence in

claim construction, [it has] also authorized district courts to rely on extrinsic evidence, which

'consists of all evidence external to the patent and prosecution history, including expert and

inventor testimony, dictionaries, and learned treatises.'" *Phillips*, 415 F.3d at 1317. "[E]xtrinsic evidence . . . is less significant than the intrinsic record in determining the legally operative meaning of claim language." *Id*. (internal quotations omitted).

### 2.     Infringement Analysis

Summary judgment can be used to determine infringement or noninfringement. *See Avia Group Intern., Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1560 (Fed. Cir. 1988). The moving party bears the burden of proving infringement or noninfringement by a preponderance of the evidence. *Mannesmann Demag Corp. v. Engineered Metal Prods., Inc.*, 793 F.2d 1279, 1282 (Fed Cir. 1986). To establish infringement, <u>every</u> limitation in a claim as construed by the Court must be in the accused product, either literally or by a substantial equivalent. *Carroll Touch, Inc. v. Electro Mech. Sys.*, 15 F.3d 1573, 1576 (Fed. Cir. 1993).

A claim is literally infringed if the accused product is exactly the same as each element of the asserted claim. *Hi-Life Prods., Inc. v. Am. Nat'l Water-Mattress Corp*., 842 F.2d 323, 325 (Fed. Cir. 1988). Even if a product does not literally infringe it may infringe under the doctrine of equivalents. *See Warner-Jenkinson Co. v. Hilton Davis Chemical Co*., 520 U.S. 17, 21 (1997). "A claim element is equivalently present in an accused device if only 'insubstantial differences' distinguish the missing claim element from the corresponding aspects of the accused device." *Sage Prods., Inc. v. Devon Indus. Inc*., 126 F.3d 1420, 1423 (Fed. Cir. 1997).

"When the patentee has chosen to narrow a claim [during prosecution], courts may presume . . . that the territory surrendered is not an equivalent of the territory claimed." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 741 (2002). Further, where the element and its alleged equivalent are opposites, they cannot be deemed equivalents as a matter of law. *See Planet Bingo, LLC v. Gametech Int'l, Inc*., 472 F.3d 1338, 1345 (Fed. Cir. 2006) (doctrine of equivalents cannot change "before" into "after," its polar opposite); *Asyst Techs.,*

*Inc. v. Emtrak, Inc.*, 402 F.3d 1188, 1195 (Fed. Cir. 2005) ("unmounted" cannot be equivalent of "mounted"); *Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1106 (Fed. Cir. 2000) ("minority" cannot be equivalent of "majority"); *see also Sage Prods.*, 126 F.3d at 1425.

Although the determination of patent infringement can in some cases be a fact-intensive process, "comparison of a properly interpreted claim with a stipulated or uncontested description of an accused device or process would reflect such an absence of material fact issue as to warrant summary judgment of infringement or noninfringement." *D.M.I. Inc. v. Deere & Co.*, 755 F.2d 1570, 1573 (Fed. Cir. 1985).

## V.   ARGUMENT

### A.   The Claim Limitation "Slot Being Narrower Than the Diameter of the Rod" Should Be Given Its Plain and Ordinary Meaning

The claim limitation "slot being narrower than the diameter of the rod" should be given its plain and ordinary meaning, i.e., claim 1 reads only on devices with a slot narrower than the diameter of the rod.

This plain meaning is fully supported by the patent specification.  The specification describes the diameter of the rod as being "too large" to fit through the slot of the sealer. (Walters Decl. Ex. A at 8:44-46 ("The rod's diameter is too large so as to be pulled out through the slot along the internal cavity of the elongated member."); *see also id*. at 7:33-36 ("Sealer *50* can not be removed from the fold unless it slides in an opposite direction to the direction it has been put on since slot *54* is narrower than the diameter of rod *60*.").  By contrast, the specification contains <u>no</u> reference to a slot narrower than the diameter of the rod.

This plain meaning is also fully supported by Mr. Gill's unequivocal disclaimer during prosecution of products having a slot wider than the diameter of the rod.  In traversing the Examiner's invalidity rejections, Mr. Gill amended claim 1 to recite a "slot being <u>narrower</u> than

the diameter of the rod."  (Walters Decl. Ex. B at 101; *see also id*. at 081, 088-089.)  In earlier

versions of claim 1, the slot recited in the claim had no upper size limit.  (*See id*. at 024-25, 081,

101.)  Mr. Gill's unequivocal surrender of claim scope precludes Source Vagabond from

arguing, contrary to the plain meaning of claim 1, that the '276 Patent covers devices having a

slot wider than (or the same width as) the diameter of the rod.

> **B.   Hydrapak Does Not Literally Infringe Because the Reversible Reservoir II Does Not Have a "Slot Narrower Than the Diameter of the Rod"**

Assuming for purposes of this motion that the Reversible Reservoir II has a "sealer . . .

with a longitudinal slot" within the meaning of the '276 Patent, Hydrapak does not infringe the

patent because the assumed slot (the "slider gap") is wider than the diameter of the sole

element—the "lip bulge"—that Source Vagabond could even argue constitutes a "rod."[2]

> **1.   The Slider Gap Is Wider Than the Diameter of the Lip Bulge**

The slider gap is wider than the diameter of the lip bulge.  This fact is apparent to the

naked eye:

---

[2] In addition to the element, "slot being narrower than the diameter of the rod," the Reversible Reservoir II lacks multiple other elements of Claim 1 of the '276 Patent.  Among many other things, the lip bulge is not "a rod" as that term is used in the '276 Patent.  As discussed above, for the sake of efficiency, Hydrapak has focused this motion on a single element that is incontrovertibly absent.



(*See* Lyon Decl. Ex. A.)

The engineering drawings confirm that the slider gap (4.2 mm, or alternatively 4.8 mm) is wider than the diameter of the lip bulge (3.0 mm).  (Lyon Decl. ¶¶ 4-6, 8.)  For this simple reason, the Hydrapak Reservoir II does not infringe the '276 Patent.

The '276 Patent is limited to devices where the "slot … is narrower than the rod."  The unambiguous claim language and fundamental rules of claim construction preclude an interpretation that would add the thickness of the container to the diameter of the rod.  But even if one were to do so, the slider gap (4.2 mm, or alternatively 4.8 mm) is still wider than the thickness of the container combined with the diameter of the rod when wrapped around it (4.0 mm as compared to the 4.2 mm slider gap, or alternatively 4.6 mm as compared to the 4.8 mm slider gap).  (*Id.* ¶ 10.)  Thus, even with the container folded over the lip bulge, that portion of the assembly can fit into the slot, illustrating that the slider gap is wider than the assembly.  (*See id.* Ex. A)

### 2.    The Catches Cannot Arguably Be Called a "Rod," and in Any Event the Slider Gap Is Wider Than the Thickness of the Catches

Hydrapak does not understand Source Vagabond to be arguing that the Reservible Reservoir II's catches are "a rod" as that term is used in the '276 Patent.  Nor could Source Vagabond make this argument.  First, the catches are plural (there are six of them); they do not comprise a singular element with "a first end and a second end" as recited in claim 1.  Second, each catch is separated spatially from the other catches; they do not, therefore, span "laterally across the lateral opening" of the container as required by the claim language.  Third, the catches are located on the outside of the container's plastic lips; the container is not (and cannot be) "folded over" the catches, as required by the claim limitation "when the portion of the container is folded over the rod."

In any event, however, the slider gap is wider than the thickness of the catch.  This fact is also apparent to the naked eye:



pa-1492968

(*See* Lyon Decl. ¶ 3 & Ex. A.)  Engineering drawings of the accused product confirm that the slider gap (4.2 mm, or alternatively 4.8 mm) is wider than the thickness of the catches (3.0 mm) for all Reversible Reservoir II products made by Hydrapak.  (*See*  Lyon Decl. ¶¶ 4-7, 9.)

\* \* \* \*

The Reversible Reservoir II does not literally infringe claim 1 of the '276 Patent because it does not have a "slot . . . narrower than the diameter of the rod."  Since claim 1 is the only independent claim, Hydrapak cannot infringe any of the dependent claims.  *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed.Cir. 1989) ("It is axiomatic that dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed.").

**C.      As a Matter of Law, Hydrapak Does Not Infringe the '276 Patent Claim Limitation "Narrower" Under the Doctrine of Equivalents**

Source Vagabond's inability to establish literal infringement is fatal to its lawsuit. Source Vagabond cannot rely on the doctrine of equivalents to establish the claim limitation "slot being narrower than the diameter of the rod" because prosecution history estoppel and the claim vitiation doctrine preclude its application here.  These issues are discussed below.

**1.      Prosecution History Estoppel Bars Application of the Doctrine of Equivalents**

"The doctrine of equivalents allows the patentee to claim those insubstantial alterations that were not captured in drafting the original patent claim but which could be created through trivial changes." *Festo Corp.*, 535 U.S. at 733-734.  "When, however, the patentee originally claimed the subject matter alleged to infringe but then narrowed the claim in response to a rejection, he may not argue that the surrendered territory comprised unforeseen subject matter that should be deemed equivalent to the literal claims of the issued patent."  *Id.*

Source Vagabond cannot use the doctrine of equivalents to recapture devices with a slot wider than the diameter of the rod because Mr. Gill disclaimed this exact claim scope during prosecution.  (*See supra* Section A.)  Mr. Gill's clear disavowal of claim scope bars a finding of infringement by equivalents.  *See Sage Prods.*, 126 F.3d at 1432 ("A patentee is not free to retrade or renege on a deal struck with the PTO during patent prosecution.").

### 2.    Claim Vitiation Bars Application of the Doctrine of Equivalents

The Supreme Court has recognized that the doctrine of equivalents "is not allowed such broad play as to effectively eliminate that element in its entirety."  *Warner-Jenkinson Co.*, 520 U.S. at 29.  Thus, "if a theory of equivalence would entirely vitiate a particular claim element, partial or complete judgment should be rendered by the court."  *Id*. at 39 n.8.

Source Vagabond cannot argue that Hydrapak infringes the '276 Patent under the doctrine of equivalents because the Reversible Reservoir II has a slot wider, not narrower, than the diameter of any element arguably resembling a rod.  Wider is the polar opposite of narrower; it is not an "equivalent" as a matter of law. *See Planet Bingo*, 472 F.3d at 1345 (Fed. Cir. 2006) ("before" not equivalent to "after"); *Asyst Techs.*, 402 F.3d at 1195 ("unmounted" not equivalent to "mounted"); *Moore U.S.A., Inc.*, 229 F.3d at 1106 ("minority" not equivalent to "majority").

## VI.    CONCLUSION

No reasonable jury could conclude that the Reversible Reservoir II has a "slot . . . narrower than the diameter of the rod," either literally or under the doctrine of equivalents.  This limitation is required for all claims of the '276 Patent.  Summary judgment of non-infringement should therefore be granted with respect to all patent claims.

Dated: November 1, 2011          Respectfully submitted,

                                 MORRISON & FOERSTER LLP


                                 By:  ___/s/ Eric S. Walters_____

                                      James E. Hough
                                      MORRISON & FOERSTER LLP
                                      1290 Avenue of the Americas
                                      New York, New York 10104
                                      Telephone: (212) 468-8000
                                      Facsimile: (212) 468-7900
                                      JHough@mofo.com

                                      Eric S. Walters (admitted pro hac vice)
                                      Christopher L. Robinson (admitted pro hac vice)
                                      MORRISON & FOERSTER LLP
                                      755 Page Mill Road
                                      Palo Alto, California 94304
                                      Telephone: (650) 813-5600
                                      Facsimile: (650) 494-0792
                                      EWalters@mofo.com
                                      ChristopherRobinson@mofo.com

                                      *Attorneys for Defendant Hydrapak, Inc.*