UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

SOURCE VAGABOND SYSTEMS, LTD.,

        Plaintiff,

-against-

HYDRAPAK, INC.,

        Defendant.

                      x

Case No.: 11 CIV 5379-CM-JLC

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT HYDRAPAK'S AMENDED MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11

James E. Hough
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
JHough@mofo.com

*Attorneys for Defendant
Hydrapak, Inc.*

pa-1491383

Defendant Hydrapak, Inc. ("Hydrapak") hereby submits this memorandum of law in support of its amended motion for sanctions pursuant to Federal Rule of Civil Procedure 11 and the Court's inherent authority to award sanctions.

## SUMMARY OF ARGUMENT

It is widely recognized that defending against baseless claims of patent infringement is inordinately expensive. For this reason, the Federal Circuit has emphasized that Rule 11 plays a particularly important role in patent cases. Nonetheless, we recognize that it is a rare case where Rule 11 sanctions are warranted in patent infringement cases, particularly at an early stage of the litigation.

Nonetheless, this is just such a case. There is no question that Source Vagabond's patent infringement claim is completely baseless. Even a casual examination of the accused device[1] reveals that it cannot infringe the patent asserted in the complaint under any conceivable claim construction. The accused product is a hydration water reservoir, used in a variety of sports and outdoor activities such as cycling, running, water sports and hiking. Hydrapak's product is readily available on the marketplace and could easily be inspected by Source Vagabond to assess whether it infringes the patent-in-suit.

The asserted patent claims a sealable liquid container system comprising a sealer that is slidingly mounted sideways over a rod. A reasonable investigation in this case would have revealed that the accused device not only lacks a rod, it involves a completely different sealing mechanism than the sealer-and-rod structure recited in the asserted patent claim. Although Rule 11 requires Source Vagabond to have inspected the device and have had a reasonable basis for

---

[1] A sample of the accused product has been filed with the Court in an envelope identified as Exhibit A to the Declaration of Christopher L. Robinson filed in support of this Rule 11 motion.

believing it infringed before filing this lawsuit, Source Vagabond has refused Hydrapak's request to explain why it believed that it had a reasonable chance of proving infringement before filing the complaint, even after being presented with a detailed analysis explaining multiple reasons why Hydrapak did not infringe the patent.

Source Vagabond clearly had another agenda for maintaining this lawsuit. Hydrapak has confirmed that even before Source Vagabond filed the complaint, it initiated a wide-ranging public relations and marketing campaign designed to intimidate Hydrapak's customers into switching to Source Vagabond through the use of thinly veiled threats that Hydrapak's product would be taken off the market, and that if they did not switch to Source, the customer could also get sued. Intimidating potential and/or current customers using baseless claims of patent infringement as a stratagem for shoring up sales is an improper purpose sanctionable under Rule 11. As is attempting to weaken a small competitor who is beating you in the marketplace by forcing it to expend substantial resources defending a frivolous patent infringement lawsuit.

## STATEMENT OF FACTS RELEVANT TO THIS MOTION

Hydrapak, Inc. is a small California company that develops and markets advanced hands-free fluid delivery systems, including custom built hydration packs, water reservoirs, and sports water bottles. (Declaration of Matthew J. Lyon ¶ 2.) Hydrapak competes in this market with brands like CamelBak® and Platypus®. (*Id*.) Hydrapak employs only about 9 people. (*Id*.) The water reservoirs at issue in this lawsuit are used in a variety of sports and outdoor activities, including cycling, running, water sports and hiking. (*Id*.)

In approximately 2000, the original Reversible Reservoir™ product line was launched, featuring a patented fold-top closure system. (*Id*. ¶ 3.) In 2006, Hydrapak introduced the next-generation Reversible Reservoir II™, featuring an innovative slider top closure system. (*Id*.) The USPTO recently approved issuance of Hydrapak's pending patent application

(No. 11/445,721) covering the unique slider top closure system utilized in the Reversible Reservoir II. (*Id.*)

Hydrapak sells its products direct to consumers through its website, as well as through numerous distributors and retailers in the United States and abroad. (*Id.* ¶ 4.) Hydrapak also acts as an original equipment manufacturer (OEM) for brand name companies like BMW, DaKine, Evoc, Ergon, Fox, Berghaus, Scott, and others. (*Id.*) Over the past six months, Hydrapak has acquired three new customers—The North Face, Adidas, and Salomon—who ceased purchasing Source Vagabond's OEM water reservoir in favor of Hydrapak's OEM water reservoir. (*Id.*)

Source Vagabond filed a complaint on August 2, 2011 alleging (1) that Hydrapak's Reversible Reservoir II directly infringed at least claim 1 of U.S. Patent No. 7,648,276 ("the '276 Patent") in violation of 35 U.S.C. § 271; and (2) that Hydrapak falsely marked this product as "Patent Pending" in violation of 35 U.S.C. § 292. (Compl., D.I. 1.) Source Vagabond alleged that the '276 Patent covers its own product, the Widepack™ water reservoir.[2] (*Id.* ¶ 17.) Source Vagabond mailed a copy of the Complaint to Hydrapak on August 3, 2011. (Robinson Decl. Ex. C.)

On August 4, 2011, Source Vagabond issued a press release announcing that it had sued Hydrapak for patent infringement. (*E.g.*, Lyon Decl. Ex. 1 at 5.) Source Vagabond sent copies of the press release by e-mail to Hydrapak's customers, or otherwise notified Hydrapak's customers by e-mail of Source Vagabond's patent infringement claim. (*Id*. Exs. 1-5.) These included former Source Vagabond customers who recently began purchasing a competing product from Hydrapak. (*See, e.g., id.* ¶ 4 & Ex. 4.) In many of those letters, Source Vagabond

---

[2] A sample of Source Vagabond's product, the Widepack™ reservoir, has been filed with the Court in an envelope identified as Exhibit B to the Declaration of Christopher L. Robinson

stated: "At this time, we have only sued Hydrapak (*and not its customers directly*) . . . ." (*See, e.g.*, *id*. Ex. 5 at 6) (emphasis added).

At a trade show in Germany on August 31 through September 3, 2011, HydraPak CEO Matt Lyon was informed that Source Vagabond approached three of Hydrapak's customers— Fox, Evoc, and Ergon— and told them that Hydrapak had lost a patent lawsuit to Source Vagabond in the United States, and that Hydrapak's water reservoirs would have to be removed from their products. (*Id*. ¶ 6.)

On August 24, 2011, counsel for Hydrapak sent counsel for Source Vagabond a letter announcing that it had just been retained by Hydrapak in connection with the present action. (Robinson Decl. Ex. D.) Counsel for Hydrapak asked whether Source Vagabond had served the complaint on Hydrapak. (*Id*.) Counsel for Source Vagabond wrote back the same day indicating that Source Vagabond had not served the complaint. (*Id*. Ex. E.)

About a week later, on September 2, 2011, Hydrapak sent Source Vagabond a detailed, six-page letter challenging the basis of Source Vagabond's complaint and the adequacy of its pre-filing investigation. (*Id*. Ex. F.) Hydrapak asked Source Vagabond to explain exactly why it believed before filing the complaint that it had a reasonable basis for pursuing its claims. Hydrapak warned Source Vagabond that it would pursue Rule 11 sanctions unless Source Vagabond withdrew the complaint by September 7, 2011, or else tendered a convincing explanation as to why Source Vagabond had not violated Rule 11. (*Id*.)

Source Vagabond responded on September 7. It refused to explain its pre-filing basis for filing suit against Hydrapak, asserting in conclusory terms that its complaint "is supported by the facts and law." (*Id*. Ex. G.) Source Vagabond then stated that it "will reserve its response to your letter at this time." (*Id*.)

Hydrapak served a motion for Rule 11 sanctions on Source Vagabond on September 16, 2011. On October 6, 2011, Source Vagabond filed an amended complaint withdrawing its false marking claim, but not withdrawing or amending its patent infringement claim. (D.I. 4.) Hydrapak served an amended motion for sanctions on Source Vagabond shortly thereafter.

Hydrapak is filing this motion after the 21-day safe harbor period under Rule 11(c)(2).

## ARGUMENT

### I.    SOURCE VAGABOND VIOLATED RULE 11

#### A.    Legal Standard

Rule 11 plays a particularly important role in patent infringement lawsuits, like the one Source Vagabond initiated against Hydrapak, because "[d]efending against baseless claims of infringement subjects the alleged infringer to undue costs—precisely the scenario Rule 11 contemplates." *View Eng'g, Inc. v. Robotic Vision Sys.*, 208 F.3d 981, 986 (Fed. Cir. 2000). "In bringing a claim of infringement, the patent holder, if challenged, must be prepared to demonstrate to both the court and the alleged infringer exactly why it believed before filing the claim that it had a reasonable chance of proving infringement." *Id*. "Failure to do so should ordinarily result in the district court expressing its broad discretion in favor of Rule 11 sanctions, at least in the absence of a sound excuse or considerable mitigating circumstances." *Id.*; *see also Antonious v. Spalding & Evenflo Cos.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002) (requiring a patentee to conduct an infringement analysis before filing suit).

To determine whether Rule 11 sanctions are warranted, the Federal Circuit applies the law of the relevant regional circuit. *Antonius*, 275 F.3d at 1072. In the Second Circuit, "liability for Rule 11 violations 'requires only a showing of objective unreasonableness on the part of the attorney or client signing the papers.'" *ATSI Commc'ns., Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 150 (2d Cir. 2009).

Rule 11(b)(3) requires an attorney to certify that "the [allegations and other] factual contentions have evidentiary support or, if specifically so identified, [are] likely [to] have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). The test under Rule 11 is not whether the Complaint, taken as a whole, is non-frivolous. *Antonius*, 275 F.3d at 1075 ("The current version of the rule makes clear that sanctions may be based on a single invalid legal or factual theory, even if other asserted theories are valid.") Rather "the claims, defenses, and other legal contentions" and "the [allegations and other] factual contentions" in any pleading must be warranted under existing law and have evidentiary support. Fed. R. Civ. P. 11(b)(2) and (b)(3).

The Court also has inherent disciplinary authority to supervise and monitor the conduct of attorneys admitted to practice. *Chambers v. Nasco, Inc.*, 501 U.S. 32, 43-46 (1991).

### B. Source Vagabond Filed a Frivolous Patent Infringement Claim

The Complaint accuses Hydrapak's Reversible Reservoir II of infringing at least claim 1 of U.S. Patent No. 7,648,276 ("the '276 Patent") either literally or under the doctrine of equivalents. (*See* Compl. ¶¶ 18-23.) This claim is baseless: Multiple claim limitations of the '276 Patent are absent in the Reversible Reservoir II.

For example, the Reversible Reservoir II does not have a rod over which a sealer is slidingly mounted. This missing element is particularly important because the applicant introduced the claim limitation requiring the claimed sealer to be "only to be slidingly mounted sideways over the rod" to overcome invalidity rejections during prosecution. (*See* Robinson Decl. Exs. J-K.) Under well-established law, it is therefore presumed that prosecution history estoppel bars application of the doctrine of equivalents with respect to this claim limitation. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 741 (2002) ("When the

patentee has chosen to narrow a claim, courts may presume . . . that the territory surrendered is not an equivalent of the territory claimed.").

The plain language of the patent claims describes at least four essential characteristics of the claimed rod. First, the rod must have "a first end and a second end" (Robinson Decl. Ex. H at claim 1)—*i.e.*, it must be singular. Second, the rod must be "fixedly attached to the container laterally across the lateral opening" (*id.*)—*i.e.*, it must span the length of the lateral opening. Indeed, all of the drawings in the patent confirm that the rod is singular and spans across the length of the lateral opening. (*See id*. at Figures 2, 3A, 3B, 4, 5, and 6; *see also id*. at 8:57 ("Rod *114* has two ends . . . ."); *id*. at 9:18-20 ("Sealer *116* is fully sliding onto rod *114* (can not be seen in FIG. 6, fully inserted in elongated member *118*).").) Third, a "portion of the container is folded over the rod." (*Id*. at claim 1.) Finally, the rod must be wider than the sealer's longitudinal slot, since claim 1 recites a "slot . . . narrower than the diameter of the rod." (*Id*.)

The Reversible Reservoir II does not have any structure that even arguably meets <u>any</u> of these elements of the claim. To form a seal, the sealing member of the Reversible Reservoir II slidably attaches to several catches located on the outside of the container's lips. (*See* Robinson Decl. Ex. A.) These catches possess none of the features of the claimed rod. First, the catches are plural; they do not comprise a singular element. Second, each catch is separated spatially from the other catches; they do not, therefore span across the length of the lateral opening. Third, the catches are located on the outside of the container when the container is in a closed configuration; the container is not (and cannot be) "folded over" the catches when the sealing member is attached. Fourth, the catches are narrower, not wider, than the longitudinal opening of the sealing member. (*See id*.) All of these features are required to state a claim for patent

infringement, and yet the Reversible Reservoir II contains none of them. (*Compare id.* Ex. A at claim 1, *with* Ex. B.)

To the extent Source Vagabond contends that the thin bulge located on the proximal end of one of the container's lips is "a rod," Source Vagabond would still not have a colorable claim for infringement that would pass muster under Rule 11. First, the lip bulge is not a "rod" according to any remotely plausible interpretation of that term.[3] Second, the lip bulge cannot constitute the claimed rod for the simple reason that its diameter is narrower, not wider, than the longitudinal opening of the Reversible Reservoir II's sealing member. Third, as described above, the sealing member slidably attaches to the catches, not the lip bulge. There is no reasonable construction of the asserted patent claim that would give rise to infringement liability.

The absence of a rod over which a sealer is slidingly mounted is fatal to Source Vagabond's claim of patent infringement. These deficiencies are obvious based on any reasonable construction of the claims and a visual inspection of the Reversible Reservoir II.

The deficiencies outlined above cannot be recaptured under the doctrine of equivalents. By deliberately narrowing the patent claims to recite a sealer that is "only to be slidingly mounted sideways over the rod," the applicant of the '276 Patent surrendered, among other things, sealers slidingly attached to other structures, like catches. Courts will presume that

---

[3] The American Heritage Dictionary defines "rod" as "a thin straight piece or bar of material, such as metal or wood, often having a particular function or use." Am. Heritage Dictionary of the English Language 1508 (4th ed. 2006). The Merriam-Webster Dictionary defines "rod" as "a slender bar (as of wood or metal)." The Merriam-Webster Dictionary (Online Ed. 2011). The '276 patent specification consistently uses the term "rod" according to its ordinary meaning. (*See, e.g.*, Robinson Decl. Ex. H at 8:34-38 ("Substantially parallel and close to opening 102, an elongated rod 114 is provided. Elongated rod 114 is preferably made of a relatively flexible yet rigid enough polymeric material that is laterally attached to container 100 and preferably welded to it."); *id.* at 8:52-54 ("In order to seal container 100, extension 104 is wrapped over rod 114 and elongated member 118 is slidingly mounted over rod 114 and the wrap.").

prosecution history estoppel bars application of the doctrine of equivalents under these circumstances, *see Festo Corp.*, 535 U.S. at 741, and there is no basis for overcoming that presumption here.

In addition, Source Vagabond cannot argue infringement by equivalents for the independent reason that, as a matter of law, neither the catches nor the lip bulge of the Reversible Reservoir II can be deemed equivalent to the claimed rod because these structures represent the antithesis of the claimed structure. Among other things, the lip bulge is plainly <u>narrower</u>, not wider, than the sealing member's longitudinal opening. In addition, the catches are located <u>outside</u>, not inside, the container when the sealing member is attached. Controlling Federal Circuit authority makes clear that there is no wiggle room for an argument for infringement by equivalents under these circumstances. *See Planet Bingo, LLC v. Gametech Int'l, Inc.*, 472 F.3d 1338, 1345 (Fed. Cir. 2006) (doctrine of equivalents cannot change "before" into "after," its polar opposite); *Asyst Techs., Inc. v. Emtrak, Inc.*, 402 F.3d 1188, 1195 (Fed. Cir. 2005) ("unmounted" cannot be equivalent of "mounted"); *Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1106 (Fed. Cir. 2000) ("minority" cannot be equivalent of "majority"); *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1425 (Fed Cir. 1997) (within cannot be equivalent of on top of).

Many other claim limitations of the '276 Patent are missing from the Reversible Reservoir II, but the limitations discussed above call particular attention to the frivolousness of Source Vagabond's complaint and the inadequacy of its pre-filing investigation (assuming that Source Vagabond actually performed one). Source Vagabond continued to press this baseless claim even after Hydrapak explained in detail why the claim lacks merit.

### C. Source Vagabond Filed Its Complaint for an Improper Purpose

It was bad enough that Source Vagabond filed a frivolous complaint against Hydrapak in violation of Rule 11. Yet even before Source Vagabond filed the complaint, it had launched a public relations campaign designed to intimidate Hydrapak's customers into switching loyalties to Source Vagabond. This campaign continued unabated even after Source Vagabond was notified of the deficiencies of its Complaint. Source Vagabond's conduct strongly suggests that it filed the complaint for the improper purposes of intimidating Hydrapak's customers and of driving up the settlement value of its frivolous complaint.

On August 1, 2011—the day before Source Vagabond filed the complaint—Source Vagabond penned a number of letters to Hydrapak's customers accusing the Reversible Reservoir II of infringing the '276 Patent. Source Vagabond's letters were thinly disguised attempts to intimidate Hydrapak's customers from continuing their business with Hydrapak.

These letters stated:

> It has come to our attention that Hydrapak's Reversible Reservoir II infringes our intellectual property, specifically our patented Widepac™ feature . . . . Accordingly, we have filed a lawsuit in federal court against Hydrapak for patent infringement, seeking an injunction . . . and recovery of damages . . . .
>
> **At this time, we have only sued Hydrapak (and not its customers directly)** . . . .

(*See, e.g.*, Lyon Decl. Ex. 1 at 4.) (emphasis added).

On August 4, 2011, Source Vagabond issued a press release announcing that it had sued Hydrapak for patent infringement "over the unique closure mechanism of Source's award-winning Widepac™ reservoir." Two color photographs of the Widepac™ reservoir were prominently displayed on the press release. (*See, e.g.*, Ex. 1 at 5.) Source Vagabond has

distributed numerous copies of this press release by e-mail to Hydrapak's customers, or otherwise notified them of Source Vagabond's patent infringement claim. (*See* Exs. 1-5.)

On August 22, 2011, after one of Hydrapak's customers declined to switch to Source Vagabond stating that "we are happy with the current solution (*i.e.*, Hydrapak's product)," Source Vagabond shot back:

> My intention was not to ask you are you happy / unhappy with the hydration system you currently buy  My intention was to inform you that [customer name redacted]  are using in its products  a hydration system that is a copy and infringe our patent and as a company that respect and protects its intellectual properties we are not going to let it happen  I suggested that in the event [customer name redacted] wish to continue its hydration project you might be willing to consider buying the original hydration product on an OEM basis

(*Id.* Ex. 5.)

At a trade show in Germany from August 31 to September 3, 2011, at least three independent sources reported to Hydrapak that Source Vagabond had been telling distributors that Source Vagabond had already *won* a lawsuit against Hydrapak in the United States, and that Hydrapak would be forced to pull its product from the market. (*Id.* ¶ 6.) To Hydrapak's knowledge, Source Vagabond has not won any lawsuit against Hydrapak. Indeed, as of September 9, 2011, Source Vagabond had not even served Hydrapak with a summons and copy of the complaint in this lawsuit.

Source Vagabond's actions betray an improper purpose to persuade Hydrapak's customers to switch to Source Vagabond instead not based on a superior product or pricing but based on intimidation tactics centered on baseless claims of patent infringement. Source Vagabond also appears to be seeking to drive up the settlement value of its frivolous claims by harassing Hydrapak and its customers in the marketplace. Sanctions have been awarded under similar circumstances. *See Galonsky v. Williams*, No. 96-CV-6207-JSM, 1997 U.S. Dist. LEXIS

19570, at *11 (S.D.N.Y. Dec. 9, 1997) (sanctions warranted where claims "had no support in law" and the "allegations relating to them were apparently made for their public relations value and as tactical moves in this litigation"); *see also Kramer v. Tribe*, 156 F.R.D. 96, 109 (D.N.J. 1994) (awarding sanctions where attorney adopted "apparent approach to litigating this case … not in the court room, but in the media").

## CONCLUSION

For the foregoing reasons, the Court should find that Source Vagabond and its counsel have violated Rules 11(b)(1), (2), and (3), and grant Hydrapak's motion for sanctions.

Dated: October 12, 2011

Respectfully submitted,

MORRISON & FOERSTER LLP

By: _____
James E. Hough
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
JHough@mofo.com

*Attorneys for Defendant Hydrapak, Inc.*