UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

SOURCE VAGABOND SYSTEMS LTD.

        Plaintiff,

-against-                                                                    No. 11 Civ. 5379 (CM) (JLC)

HYDRAPAK, INC.,

        Defendant.
-----------------------------------------------------------x

## DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT, DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT, GRANTING DEFENDANT'S MOTION FOR RULE 11 SANCTIONS, AND DENYING ALL OTHER PENDING MOTIONS AS MOOT

McMahon, J.:

    Pending before the Court are a number of motions relating to plaintiff's claim that defendant's Reversible Reservoir II product infringes at least one claim of plaintiff's patent: U.S. Patent No. 7,648,276 (the "'276 Patent"), either literally or under the doctrine of equivalents. The Court grants defendant's motion for summary judgment dismissing the complaint because defendant's product does not infringe plaintiff's patent; this automatically requires the Court to deny plaintiff's cross-motion for summary judgment of infringement and moots all other motions for summary judgment.

    Plaintiff's patent contains a single allowed claim:

> A sealable flexible liquid container system comprising:
>
> **a flexible liquid container** having a cavity for receiving liquids, said cavity formed of two films having the majority of their perimeter fused, and a portion of the perimeter unfused so as to present a lateral opening for filling the container with liquids, and a liquid dispensing outlet;
>
> **a rod**, having a first end and a second end, fixedly attached to the container laterally across the lateral opening of the flexible container so that a portion of the container adjacent the lateral

1

opening can be folded over the rod and substantially overlap an adjacent portion of the container; **and**

**a sealer**, comprising an elongated rigid member having two opposite sides along which a hollow cavity is extended **with a longitudinal slot** wherein said slot is adapted to accommodate said two films, wherein the sealer is provided with an opening on at least one of the opposite sides with a broadening for inserting an end of the rod into the cavity when the portion of the container is folded over the rod into the hollow passage, **the slot being narrower than the diameter of the rod, so that the sealer is only to be slidingly mounted sideways over the rod.**

This claim was much broader as originally filed: the "slot" recited in the claim-as-filed had no upper size limit, but this was narrowed during prosecution so that the slot had to be narrower than the diameter of the rod.

It is this issue – the size of the slot in relation to the diameter of the rod – that lies at the heart of this case.

Defendant is a San Francisco Bay area company that makes and sells the Reversible Reservoir II (the "Reversible Reservoir"), a water reservoir used for hydration by persons engaged in sports and outdoor activities like cycling, running and hiking. The Reversible Reservoir is a flexible water reservoir with a slide-seal closure system. The sealing member, called a "slider," with an opening or gap across its longitudinal axis. The gap is 4.2 mm wide on one model of the product and 4.8 mm wide on the other model. The slider attaches to six discrete elements, known as "catches," located on the outside of two plastic lips that run along each side of the mouth of the water reservoir. The catches, which have a thickness of about 3.0 mm, guide the arms of the slider along the container's plastic lips, locking the slider in place and preventing it from detaching from the container.

One of the Reversible Reservoir's lips contains a small protrusion, called a lip bulge, on its interior proximal end. The lip bulge is about 3.0 mm in diameter. Before the slider is attached to the water reservoir, the plastic lips are folded together, which causes a portion of the container to wrap around the lip bulge. The combined thickness of the lip bulge, together with the container wrapped around it, is 4.0 mm for the slider model having a gap of 4.2 mm or 4.6 for the slider model having a gap of 4.8 mm.

Plaintiff alleges that the Reversible Reservoir – which was apparently introduced into the market before the patent was allowed, and indeed, at a time when the application, which had been denied and not pursued with the PTO for some years, did not include the language about the size of the slot (Hydrapak's Reply Brief in Supp. of its Am. Mot. for Sanctions at 3 (ECF No. 50)) – infringes Claim 1 of the '276 Patent. Defendant moves for summary judgment in its favor, arguing that the claim reads only on devices with slots narrower than the diameter of the rod, which is not the case with its product.

For purposes of this motion, the parties agree that the slider gap in the Reversible Reservoir is the "slot" and the lip bulge in the Reversible Reservoir corresponds (at least in part) to the "rod" in the patent in suit. The parties do dispute whether the rod includes another element, about which there will be further discussion below.

*Standard for Summary Judgment*

A party is entitled to summary judgment when there is no "genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). In addressing a motion for summary judgment, "the court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in [its] favor." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Whether any disputed issue of fact exists is for the Court to determine. Balderman v. U.S. Veterans Admin., 870 F. 2d 57, 60 (2d Cir. 1989). The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. Celotex v. Catrett, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must present "specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250. The party opposing summary judgment "may not rely on conclusory allegations or unsubstantiated speculation." Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).

Not every disputed factual issue is material in light of the substantive law that governs the case. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." Anderson, 477 U.S. at 248. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec., 475 U.S. at 586. To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. If no reasonable jury could return such a verdict, summary judgment is warranted.

Summary judgment is appropriate in a patent case, as in other cases, when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Nike Inc. v. Wolverine World Wide, Inc., 43 F.3d 644, 646 (Fed. Cir. 1994). In particular, summary judgment can be entered in a case alleging infringement of a patent. Avia Grp. Intern., Inc. v. L.A. Gear Cal., Inc., 853 F. 2d 1557, 1560 (Fed. Cir. 1988).

*Standard for Patent Infringement*

To decide whether a patent has been infringed, a court engages in a two-step inquiry. First the court construes the claim that is allegedly infringed – a pure question of law. Second, the court must determine whether the accused product contains each and every limitation of the properly construed claim(s), either literally or by a substantial equivalent – a question of fact. See Freedman Seating Co., v. Am. Seating Co., 420 F.3d 1350, 1356-57 (Fed. Cir. 2005).

*Claim Construction*

Claim construction is a straightforward process. Markman v. Westview Instruments, Inc., 517 U.S. 370, 372 (1996). The words of a claim are generally given their ordinary and customary meaning. Phillips v. AWH Corp., 415 F.3d 1303, 1313 (Fed. Cir. 2005). In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words. Id. at 1314.

I agree with defendant that the claim limitation "slot being narrower than the diameter of the rod" should be given its plain and ordinary meaning. There is nothing complicated or technical about this claim language. A slot is an opening or aperture in an object through which some other object can be passed. The rod is a three dimensional, cylindrical stick; the claim language itself provides that the rod has "a first end and a second end." Diameter is a mathematical concept; the diameter of the rod is the distance across the rod, or, put otherwise, from one edge of the cylinder to the other. None of these words requires definition or interpretation beyond its plain and ordinary meaning.

The patent's specification reinforces the plain meaning of the disputed phrase that lies at the heart of this lawsuit. It specifically states that the rod has to be "too large" to fit through the slot of the sealer – which perforce means that the slot must be smaller than the diameter of the rod.

Additionally, the patentee unequivocally disclaimed products having a slot wider than the diameter of the rod. While earlier versions of Claim 1 recited a slot that had no upper size limit, the patent as approved contained the specific limitation on size discussed above: the slot had to be narrower than the diameter of the rod.

Plaintiff suggests that this Court construe the relevant language of Claim 1 differently. It argues that the phrase "*the slot being narrower than the diameter of the rod, so that the sealer is only to be slidingly mounted sideways over the rod*" means "*the slot is narrower than the diameter of the rod together with the container folded over it, so that the sealer is only to be slidingly mounted sideways over the rod and the container*" (emphasis added). Plaintiff argues that if the Court looks at the "purpose" of the invention in construing the claim it will conclude that this broader construction is correct.

But claim construction is a function of the words of the claim, not the "purpose" of the invention. Plaintiff's proposed construction violates nearly every tenet of claim construction and amounts to a wholesale judicial rewriting of the claim.

The words of the claim define the invention to which the patentee is entitled the right to exclude, and courts must look to those words to define the scope of the patented invention. Vitronics Corp. v. Conceptronic., Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996). Plaintiff asks the Court to look to the supposed purpose of the invention, rather than to the words it used to describe the invention. Source did not draft the claim to compare the size of the slot with the diameter of the rod together with the folded over container. Instead, the patentee drafted his

4

claim so that the size of the slot relates only to the diameter of the rod. Plaintiff is bound by its lexicography.

Plaintiff's proposed construction also contradicts the specification, which states: "Sealer 50 cannot be removed from the fold unless it slides in an opposite direction to the direction it has been put on *since slot 54 is narrower than the diameter of rod 60.*" '276 Patent at 7:33-36 (emphasis added).

Plaintiff argues that the claim makes no sense unless the thickness of the container when folded over the rod is incorporated into the phrase "the slot is narrower than the diameter of the rod." But the PTO rejected Claim 1 over prior art that disclosed a device whereby the rod together with the folded over container could be forced into the sealer. (Walters Decl. Ex. B at 087 (ECF No. 15).) This is the so-called "Dikeman" reference. The patentee responded by narrowing the claim to relate the size of the slot to the diameter of the rod. According to an analysis prepared on or about October 6, 2011 and provided to counsel for Hydrapak, "this language was introduced to differentiate from the Dikeman reference (U.S. Pat. 5,913,456), which disclosed a rod that was forced into place in the channel." (Gill Decl. (the "Gill Declaration") Ex. A at 9 (ECF No. 45).) The inventor is bound by his choice of words.

Plaintiff's argument suffers from a further defect: it argues that its construction is necessary for the invention to make sense. But a court may not rewrite a claim, even to keep it from being nonsensical. In Chef America, Inc., v. Lamb-Weston, Inc., 358 F.3d 1371, 1373-74 (Fed. Cir. 2004), the patentee claimed a process for making a dough product comprising "heating the . . . dough to a temperature" of about 400-850 degrees. The patentee urged the Court to interpret the claim as if it read "heating the . . . dough at a temperature of about 400-850 degrees," noting that heating dough "to" such a high temperature would produce a "charcoal briquette." The Federal Circuit refused to rewrite the plain language of the claim, holding "courts may not redraft claims, whether to make them operable or sustain their validity" – even if the plain meaning of the words used in the claim leads to a "nonsensical result." Id.

Here, the plain meaning of the claim language is that the only limitation is the relationship between the size of the slot and the diameter of the rod . . . not the rod and something else. As in Becton, Dickinson & Co. v. Tyco Healthcare Group, LP, 616 F.3d 1249, 1255 (Fed. Cir. 2010), I reject plaintiff's convoluted claim interpretation, which contradicts both the plain meaning of the claim language and the intrinsic evidence in the file wrapper.

*Defendant Is Entitled to Summary Judgment Dismissing the Claim of Infringement*

Having construed the relevant claim language, I turn to the parties' allegations concerning infringement.

*No Direct Infringement*

Plaintiff concedes that the portion of defendant's product that corresponds to the "slot" (the slider gap) is wider than the diameter of what is alleged to be the "rod" (the lip bulge). It is thus impossible for the accused product to infringe literally, since it does not literally have a

5

"slot . . . narrower than the diameter of the rod." As the recitation of facts above makes clear, this is true (i.e., the slot is not narrower than the diameter of the rod) even if one were to construe the phrase "slot . . . narrower than the diameter of the rod" as plaintiff proposes, and add the width of the fold over container to the width of the lip (the "rod" equivalent). In both of defendant's products, the slot is still several millimeters larger than the diameter of the "rod" (i.e., the rod with the portion of the container that is folded over it). So a finding of literal infringement is impossible.

Plaintiff does not really argue otherwise.

*Infringement by Equivalents*

Instead, plaintiff argues that the Reversible Reservoir infringes the '276 Patent under the doctrine of equivalents. Defendant counters that (1) prosecution history estoppels precludes plaintiff from relying on the doctrine of equivalents to recapture devices with a slot that is wider than the diameter of the rod, and (2) claim vitiation bars application of the doctrine of equivalents.

Hydrapak is correct on both counts.

**Prosecution History Estoppel**: Source does not dispute that the patentee narrowed Claim 1 during prosecution to recite a "slot . . . narrower than the diameter of the rod." There exists a presumption that the narrowing amendments were made for a substantial reason related to patentability, Warner-Jenkinson, 520 U.S. at 33, and Source cannot recapture the surrendered territory under the doctrine of equivalents, Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 535 U.S. 722, 737 (2002).

In opposing Hydrapak's motion for summary judgment, Plaintiff argues that the amendment that led to the claim limitation was not introduced for the purposes of patentability, but instead was intended simply to rephrase the claim. However, the law requires that a patentee who makes such an argument must point to *evidence from the file history* demonstrating that the amendment was made for a reason unrelated to patentability. "When the prosecution history record reveals no reason for the narrowing amendment, Warner-Jenkinson presumes that the patentee had a substantial reason relating to patentability." Festo Corp, 344 F.3d at 1366-67.

Here, Source points to nothing in the file wrapper that supports its claim that the amendment was unrelated to patentability. Indeed, the patentee explicitly states that "the claims in their amended form overcome [the PTO's Sec. 112] objections." The nature of the amendments confirms this representation. Plaintiff concedes that the width of the sealer's slot narrowed when it amended Claim 1 during prosecution in response to an obviousness rejection over the Dikeman reference. That is a reason related to patentability. Plaintiff also narrowed Claim 1 in response to PTO rejections for indefiniteness, lack of written description and non-enablement by replacing the phrases "substantially parallel lips" and "the distance between the lips allowing" with the now-disputed words "slot being narrower than the diameter of the rod." This, too, was an amendment related to patentability. (Walters Decl. Ex. B at 101, 107-08 (ECF No. 15).)

6

Plaintiff errs when it argues that the doctrine of equivalents "should only bar Source from recapturing the prior art." In fact, the law provides that a patentee is held to the scope of what he ultimately claims, even if he surrenders more through amendment than may have been absolutely necessary. Norian Corp. v. Stryker Corp., 432 F.3d 1356, 1361-62 (Fed. Cir. 2005).

**Claim Vitiation**: The doctrine of equivalents is not allowed "such broad play as to effectively eliminate [a claim] element in its entirety." Warner-Jenkinson, 520 U.S. at 29. Claim vitiation presents a question of law to be decided by the Court. Trading Techs. Int'l, Inc. v. eSpeech, Inc., 595 F.3d 140, 1355-56 (Fed. Cir. 2010); see also Warner-Jenkinson, 520 U.S. at 39 n.8.

Here, the vitiation is obvious. The Reversible Reservoir has a slot *wider*, not *narrower*, than the diameter of the element that corresponds to the rod. This is true whether the rod is limited to the lip/lip bulge or includes the portion of the container that folds over the lip bulge as well; the slot is wider than any element or combination of elements that arguably resemble the "rod" feature of the claimed invention. Wider, being the opposite of narrower, cannot be deemed its "equivalent" as a matter of law – any more than "before" is equivalent to "after," Planet Bingo LLC v. Gametech Int'l, Inc., 472 F.3d 1339, 1345 (Fed. Cir. 2006), "unmounted" is equivalent to "mounted," Asyst Techs. Inc.v. Emtrak, Inc., 402 F.3d 1188, 1195 (Fed. Cir. 2005), "minority" is equivalent to "majority," Moore U.S.A.,Inc. v. Standard Register Co., 229 F.3d 1091, 1106 (Fed. Cir. 2000), or "within" is to "on top of," Sage Prods., Inc., v. Devon Indus., Inc., 126 F.3d 1420, 1425 (Fed. Cir. 1997).

For these reasons, defendant is entitled to summary judgment dismissing plaintiff's claim of patent infringement (ECF No. 11) and plaintiff's cross-motion for summary judgment on the issue of infringement (ECF No. 22) is necessarily denied.

Because this decision disposes of the issue of infringement (and so the complaint), it is not necessary to reach defendant's second, expanded motion (strangely denominated a cross-motion) for summary judgment, (ECF No. 28); it is denied as moot.

*Motion for Sanctions Under Rule 11*

Defendant Hydrapak has moved for sanctions pursuant to Fed. R. Civ. P. 11. (ECF No. 34.) The motion is granted.

In this Circuit (and so by extension in the Federal Circuit in any case arising out of the Second Circuit), Rule 11 sanctions are warranted when the defendant demonstrates "a showing of objective unreasonableness on the part of the attorney or client signing the papers." ATSI Commc'ns, Inc., v. Shaar Fund Ltd., 579 F.3d 143, 150 (2d Cir. 2009). The test under Rule 11 is not whether the Complaint, taken as a whole, is non-frivolous, but rather, whether the claims, defenses and other legal contentions and the allegations and other factual contentions in any pleading are warranted under existing law and have evidentiary support. Put otherwise, a party opposing a Rule 11 motion for sanctions in a patent infringement case has to demonstrate "exactly why it believed *before filing the claim* that it had a reasonable chance of proving

7

infringement." View Eng'g, Inc., v. Robotic Vision Sys., 208 F.3d 981, 986 (Fed. Cir. 2000) (emphasis added).

Hydrapak argues that the Reversible Reservoir does not have any structure that even arguably meets any of four elements of the "rod" claimed in the patent. In dismissing the complaint, this Court reached only one of those elements: the claim that the "slot" in the reservoir for holding liquids had to be "narrower than the diameter of the rod." As is discussed above, even adopting plaintiff's erroneous construction of that phrase, and so widening the diameter of the "rod" to its largest possible size, the "slot" in defendant's products is wider, not narrower, than the rod. As Hydrapak's counsel argued at our first conference, the difference is apparent to the naked eye, and the tape measure leaves no room for doubt. It was thus not objectively reasonable to argue that the Reversible Reservoir infringed the '276 Patent literally; that claim lacked evidentiary support no matter how the claim was construed.

Neither was it objectively reasonable to argue that the Reversible Reservoir II infringed the '276 Patent by equivalents, since it is settled under existing law that a thing that is "wider" than something else cannot be deemed equivalent to a thing that is "narrower" than something else. Therefore, Source's claims, legal contentions and allegations cannot be said to be warranted under existing law, and lack evidentiary support.

Hydrapak points to a number of other reasons why its products could not possibly be deemed to infringe the '276 Patent, but confining our discussion to the bases for dismissing the lawsuit suffices to establish that sanctions are warranted.

Source argues that this Rule 11 motion is simply a backdoor way of making a motion for summary judgment. But as Hydrapak has made, not one, but two separate motions for summary judgment – one of which it has now won – this argument falls by the wayside. Hydrapak was not required to wait for a ruling on its merits motion, though it might have been better form to do so. This motion for sanctions is not, as Source insists, a motion for summary judgment masquerading as a motion for sanctions.

Source relies for its good faith defense on the Gill Declaration, to which reference has already been made, as well as an attorney's declaration in which counsel insists that he performed claim construction, analyzed a sample of Hydrapak's product and concluded that there was a reasonable basis for alleging infringement, either literally or under the doctrine of equivalents.

The "detailed infringement analysis" attached to the Gill Declaration is a four page document that simply restates the claim construction argument this Court rejected earlier in this opinion: it rewrites the claim language to expand the scope of the patent so as to manufacture infringement. It does not even contain any product measurement that would tend to show whether Hydrapak's products infringe under any version of claim construction!

Source insists that a dispute over claim construction cannot be the basis for a sanctions motion, and relies on the Federal Circuit's opinion in Q-Pharma, Inc. v. Andrew Jergens Co., 360 F.3d 1295 (Fed. Cir. 2004), in which the Federal Circuit concluded that the plaintiff's claim interpretation, "while broad, followed the standard canons of claim construction and was

8

reasonably supported by the intrinsic record." Id. at 1301. But in this case, as already noted, Plaintiff's claim construction *violates all the relevant canons of claim construction*. I cannot conclude that an "analysis" that adds words to the claim language in order to support a claim of infringement "follow[s] standard canons of claim construction." Indeed, Source's claim construction argument in this case reminds me a great deal of what this Court described as a "strained" interpretation of "plain vanilla" words in a claim in another case where the defendant obtained an early victory based on the plain language of the claim and then successfully sought sanctions from this Court: AstraZeneca AB v. Dr. Reddy's Lab., Ltd., No. 07 Civ. 6790 (CM), 2010 WL 1375176 (S.D.N.Y Mar. 30, 2010).

To the extent that Source is arguing that it is immune from sanctions simply because its attorneys aver that they construed the claim and compared them to the product before filing suit, it is simply wrong. The same was true in Eon-Net LLP v. Flagstar Bancorp, 653 F.3d 1314 (Fed. Cir. 2011). There, as here, the patentee's counsel claimed to have construed the claims and compared them to the accused product before filing suit, yet the Federal Circuit affirmed an award of Rule 11 sanctions based on the frivolousness of the patentee's claim construction.

Furthermore, nothing in either the October 6, 2011 document or counsel's declaration explains what pre-suit analysis supported a claim for infringement under the doctrine of equivalents. As noted above, Source essentially abandoned its claim of literal infringement in the face of Hydrapak's summary judgment motion and relied instead on an equivalents theory. But neither the attorney's affidavit nor plaintiff's "pre-suit" analysis (assuming it was in fact produced prior to filing the lawsuit, which is open to question) never mentioned, let alone analyzed, how Hydrapak's product infringed Source's patent under the doctrine of equivalents.

Finally, the document on which Source relies to support its claim of conducting "pre-suit analysis" does not appear to be a pre-suit document. The only date the document bears is October 6, 2011 – *more than two months after this lawsuit was filed,* at a time when counsel for the parties were engaged in a debate over the merits of a claim already asserted. In his Declaration, Gill describes this analysis as "the October 6, 2011 infringement analysis," which (using standard principles of grammar and syntax), suggests that the document was prepared on or about October 6, not that it was prepared prior to the filing of the lawsuit in August of 2011. Further evidence for this "construction" can be found in the document itself; on page 4, the author notes, "[W]e have now filed an amended complaint withdrawing the false markings claim," and also predicts that this Court "will deny any motion for sanctions under Rule 11." Obviously, the amended complaint was not filed before the action was commenced, and the email chain attached to the Gill Declaration indicates that sanctions were not threatened until after the lawsuit was filed. The conclusion that this document was prepared well after litigation began is simply inescapable. A document prepared two months after suit was filed proves nothing about what investigation was conducted prior to the time counsel actually signed the paper that was filed with the Court – the original complaint – which is the relevant date for Rule 11 purposes.

It is true that Source's conduct here does not approach the egregiousness of the conduct of the attorneys in some of the cases on which Hydrapak relies. And Rule 11 is not appropriately invoked where a case is close on the merits (which is why I and so many of my colleagues bridle

9

at the flood of Rule 11 motions that arrive on our doorsteps). But this case is simply not close on the merits.

The Court refers this matter to the Hon. James L. Cott, United States Magistrate Judge, for a hearing on the amount of sanctions to be awarded.

The Clerk of the Court is directed to close all pending motions at ECF Nos. 11, 22, 28 and 34.

Dated: April 11, 2012

                                                        */s/ Colleen McMahon*
                                                             U.S.D.J.

BY ECF TO ALL COUNSEL

10