UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------

SOURCE VAGABOND SYSTEMS LTD.,

                       Plaintiff,

         v.

HYDRAPAK, INC.,

                       Defendant.    /

Case No. 11-CIV-5379 (CM) (JLC)

**ECF CASE**

**ELECTRONICALLY FILED**

------------------------------------------------------

_____

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
FOR PARTIAL RECONSIDERATION OF THE COURT'S
APRIL 11, 2012 DECISION AND ORDER (DOC. NO. 52)**
_____

Guy Yonay (GY-3028)
GuyY@pczlaw.com
Clyde A. Shuman (CS-6351)
ClydeS@pczlaw.com
PEARL COHEN ZEDEK LATZER LLP
1500 Broadway, 12th Floor
New York, NY 10036
Tel: (646)878-0800
Fax: (646)878-0801

_Attorneys for Plaintiff_
_Source Vagabond Systems Ltd._

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................ ii

A.   Source's Counsel Conducted a Reasonable Pre-Filing Infringement
     Analysis................................................................................................2

     1.   Source's Pre-Filing Infringement Determination Was
          Adequate ....................................................................................2

     2.   The Gill Declaration Was Indicative of, but did not
          Constitute, the Pre-Filing Analysis ............................................4

B.   Source Did Not Engage in Litigation Misconduct, Nor Was the
     Litigation Brought with Subjective Bad Faith .........................................4

C.   Source's Claim Construction was Reasonable ........................................8

     1.   It was Not Improper for Source to Consider the Purpose of
          the Limitation at Issue in its Claim Construction .......................9

     2.   Source's Claim Construction was Consistent with the Claim
          and the Specification................................................................10

     3.   Source's Claim Construction Was Not Contradicted by the
          File History ...............................................................................11

     4.   Source's Claim Construction Properly Avoids a Nonsensical
          Result .......................................................................................13

D.   Source's Arguments Regarding the Doctrine of Equivalents Were
     Not Unreasonable..................................................................................14

     1.   The Prosecution of the '276 Patent Did Not Create Relevant
          Estoppel....................................................................................15

     2.   Source Reasonably Believed that its Claim Construction
          Does Not Result in Claim Vitiation............................................16

E.   Conclusion ............................................................................................18

<u>TABLE OF AUTHORITIES</u>

Cases                                                                                          Page(s)

*Adams Respiratory Therapeutics, Inc. v. Perrigo Co.,*
    616 F.3d 1283 (Fed. Cir. 2010)......................................................................... 17

*Arthrocare Corp. v. Smith & Nephew, Inc.,*
    406 F.3d 1365 (Fed. Cir. 2005)........................................................................... 9

*AstraZeneca AB v. Dr. Reddy's Laboratories, Ltd.,*
    2010 WL 1375176, 2010 U.S. Dist. LEXIS 32883 (S.D.N.Y., Mar. 30, 2010) ............ 5

*Asyst Techs. Inc. v. Emtrak, Inc.,* 402 F.3d 1188
    (Fed. Cir. 2005)................................................................................................. 17

*Becton, Dickinson and Co. v. Tyco Healthcare Group, LP,*
    616 F.3d 1249 (Fed. Cir. 2010)......................................................................... 14

*Brooks Furniture Mfg., Inc. v. Dutailier Intern., Inc.,*
    393 F.3d 1378 (Fed. Cir. 2005) ....................................................................... 5, 8

*Chef America, Inc. v. Lamb-Weston, Inc.,*
    358 F.3d 1371 (Fed. Cir 2004)......................................................................... 14

*Cohesive Technologies, Inc. v. Waters Corporation,*
    543 F.3d 1351 (Fed. Cir. 2008)........................................................................... 9

*Eon-Net LLP v. Flagstar Bancorp,*
    653 F.3d 1314 (Fed. Cir. 2011).......................................................................... 6, 7

*iLOR, LLC v. Google, Inc.,*
    631 F.3d 1372 (Fed. Cir. 2011)........................................................................... 5

*Joao v. Sleepy Hollow Bank,*
    348 F. Supp. 2d 120 (S.D.N.Y. 2004)................................................................. 13

*Joao v. Sleepy Hollow Bank,*
    418 F. Supp. 2d 578 (S.D.N.Y. 2006)................................................................. 13

*MBIA Insurance Corp. v. Patriarch Partners VIII, LLC,*
    2012 U.S. Dist. LEXIS 48041 (S.D.N.Y., Apr. 4, 2012)......................................... 1

*Moore U.S.A., Inc. v. Standard Register Co.,*
    229 F.3d 1091 (Fed. Cir. 2000) ......................................................................... 17

*Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.,*
    508 U.S. 49 (1993).............................................................................................. 1

*Q-Pharma, Inc. v. Andrew Jergens Co.*,
   360 F.3d 1295 (Fed. Cir. 2004)..........................................................................3, 4, 8

*Springs Window Fashions, LP v. Novo Indus., LP*,
   323 F.3d 989 (Fed. Cir. 2003)..........................................................................5

*U.S. Philips Corp. v. Iwasaki Electric Co. Ltd.*,
   505 F.3d 1371 (Fed. Cir. 2007)..........................................................................17


Statutes

35 U.S.C. §285..........................................................................5


Rules

Fed. R. Civ. P. 11.............................................................*passim*

S.D.N.Y. Local Civ. R. 6.3.............................................................1

Plaintiff Source Vagabond Systems, Ltd. ("Source") submits this memorandum of law in support of its motion, pursuant to Local Civil Rule 6.3, for partial reconsideration of the Court's April 11, 2012 decision granting Hydrapak's motion for Rule 11 sanctions (Doc. No. 52).  Source seeks reconsideration of that portion of the Decision imposing sanctions under Fed. R. Civ. P. 11.[1]

As the Supreme Court admonished, "a court must resist the understandable temptation to engage in post hoc reasoning by concluding that an ultimately unsuccessful action must have been unreasonable or without foundation.  The court must remember that even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for brining suit."  *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 61, n. 5 (1993) (citations and internal quotation marks omitted).

Respectfully, Source believes the decision granting Hydrapak's motion for Rule 11 sanctions was in error, and therefore submits the instant memorandum to set forth concisely the factual basis and controlling decisions which Source believes the Court has overlooked, and that might reasonably be expected to alter the Court's decision.[2]  More precisely, in granting sanctions, the Court overlooked Federal Circuit case law that supported the legal principles on which Source's complaint was based.  In addition, Source is submitting herewith a detailed declaration of Source's CEO, and of Source's counsel describing the pre-filing investigation conducted, showing its reasonable basis for filing the present complaint.

---

[1]      Source reserves its right to appeal all portions of the decision to the Court of Appeals for the Federal Circuit.

[2]      See Local Civil Rule 6.3; *MBIA Insurance Corp. v. Patriarch Partners VIII, LLC*, 2012 U.S. Dist. LEXIS 48041 at *2 (S.D.N.Y., Apr. 4, 2012).

Reconsideration is necessary to correct clear errors and prevent manifest injustice namely, imposing sanctions on Source where counsel did in fact conduct an objectively reasonable pre-filing infringement analysis of the Hydrapak product, brought this lawsuit in good faith, and did not engage in any inappropriate litigation misconduct throughout the case.

**A.      Source's Counsel Conducted a Reasonable Pre-Filing Infringement Analysis**

The Court granted Hydrapak's motion for Rule 11 sanctions because it found that Source failed to show "why it believed *before filing the claim* that it had a reasonable chance of proving infringement." (Doc. No. 52 at 7-8, emphasis in original).  However, the unrebutted evidence is that Source and its counsel did in fact conduct an infringement investigation and analysis before filing this complaint.

***1.      Source's Pre-Filing Infringement Determination Was Adequate***

As set forth in the accompanying Declaration of Guy Yonay in Support of Source's Motion for Reconsideration ("Yonay Recon. Dec."), and the Declaration of Yoram Gill in Support of Source's Motion for Reconsideration ("Gill Recon. Dec."), signed under penalty of perjury, Source has set out in detail its pre-filing infringement analysis.[3]  This analysis (a) construed the relevant claim based on the patent claim, the specification, the file history, and the prior art; (b) was based on an actual obtained

---

[3]      Source did not previously provide the detailed analysis because litigation was ongoing, and the analysis was confidential work product in anticipation of litigation.  However, the Court now having ruled against Source, it has agreed to disclose the above pre-filing analysis.  (Yonay Recon. Dec. ¶48).

product; (c) applied the claim as construed to the obtained Hydrapak product; and (d) concluded that the product infringed claim 1.

As described in detail in the accompanying declaration of counsel, the claim construction and infringement analysis were conducted prior to filing the original complaint. (Yonay Recon. Dec. ¶¶10-13; Gill Recon. Dec. ¶¶3, 7). Moreover, counsel was aware of the language in claim 1, and concluded that it should be construed to mean that the relevant comparison should be between the width of the slot and the thickness of the rod when the container was folded over it. (*Id*.)

Both Mr. Gill and counsel already had personal knowledge of prosecution of the '276 Patent, and considered Source's claim interpretation to be consistent with the prior art and file history. (Yonay Recon. Dec. ¶¶18-28; Gill Recon. Dec. ¶¶5-6). This understanding is further supported by counsel's and Mr. Gill's discussions with the Examiner during prosecution of the patent application. (*Id*. at ¶21; Gill Recon. Dec. ¶¶5-6).

The present facts are similar to *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1301 (Fed. Cir. 2004), in which the Federal Circuit affirmed the reasonableness of plaintiff's pre-filing investigation, where "although [plaintiff's counsel] did not remember preparing a claim chart, he did review the patent's claims, written description, and prosecution history and interpret the individual claim terms." Rule 11 requires "at a minimum, that an attorney interpret the asserted patent claims and compare the accused device with those claims before filing a claim alleging infringement." *Q-Pharma*, 360 F.2d at 1300-1301. Uncontroverted evidence submitted by Source demonstrates that its pre-filing construction is indeed "a good faith, informed comparison of the claims of a

patent against the accused subject matter," which the Federal Circuit has held is sufficient to avoid Rule 11 sanctions.  *Q-Pharma*, 360 F.2d at 1303.

### 2.    *The Gill Declaration Was Indicative of, but did not Constitute, the Pre-Filing Analysis*

It is clear from the foregoing that counsel for Source conducted its infringement analysis (including claim construction) ***before*** filing the original Complaint on August 2, 2011.  The Court seems to have regarded the October 6, 2011 letter regarding infringement referred to by Mr. Gill as the sole basis of the pre-filing infringement analysis.  (Doc. No. 52 at 9).  However, that Source provided written confirmation of its pre-filing analysis to Hydrapak on October 6, 2011 should not be taken to mean that Source did not conduct a reasonable infringement analysis before it filed the original Complaint, or that that letter was the entirety of that pre-filing analysis.  (*Id*; see also Doc. No. 45 at ¶ 11).

Two declarations of each of Source's counsel and Mr. Gill have now been submitted, each signed under penalty of perjury, attesting to counsel's infringement analysis ***before the filing of the original Complaint***.  Accordingly, Source requests that the Court reconsider imposition of Rule 11 sanctions based on the alleged lack of a pre-filing infringement analysis.

### B.    Source Did Not Engage in Litigation Misconduct, Nor Was the Litigation Brought with Subjective Bad Faith

The Court based the Rule 11 decision on Source's purportedly "*violat[ing] all the relevant canons of claim construction*."   (Doc. No. 52, at 9, emphasis in original).

However, even if Source's claims were objectively baseless – and, as shown below, they were not – there has been no showing that the present litigation was subjectively brought in bad faith.  Indeed, there is a presumption that the assertion of infringement of a duly granted patent is made in good faith.  *Springs Window Fashions, LP v. Novo Indus., LP*, 323 F.3d 989, 999 (Fed. Cir. 2003) (patentee's assertion of valid patent is presumed to be made in good faith).  As stated by Mr. Gill, Source's motivation for bringing this lawsuit was to stop Hydrapak's infringement of the '276 Patent, and Source had no improper motives in bringing this suit.  (Gill Recon. Dec. ¶8).  Therefore, the presumption of good faith has not been rebutted.

As with the standard for deeming a case exceptional under 35 U.S.C. §285, "[a]bsent misconduct in conduct of the litigation or in securing the patent, sanctions may be imposed against the patentee ***only if both (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless***."  *Brooks Furniture Mfg., Inc. v. Dutailier Intern., Inc.*, 393 F.3d 1378, 1384 (Fed. Cir. 2005) (emphasis added).  See also, *iLOR, LLC v. Google, Inc.*, 631 F.3d 1372, 1377 (Fed. Cir. 2011) (both the objective and the subjective elements must be established by clear and convincing evidence).

The cases relied upon by the Court imposed sanctions not merely because those courts disagreed with the proposed arguments, but rather because all included both improper litigation tactics and subjective bad faith of the plaintiff.  There has been no showing of such litigation abuse or subjective bad faith by Source, certainly not by clear and convincing evidence.

In *AstraZeneca AB v. Dr. Reddy's Laboratories, Ltd.*, 2010 WL 1375176, 2010 U.S. Dist. LEXIS 32883 (S.D.N.Y., Mar. 30, 2010) (McMahon, J.), plaintiff Astra

Zeneca proposed a claim construction that conflicted with the Examiner's Reasons for Allowance, and that was directly contrary to representations it made to the Patent Office to gain allowance.   On the contrary, as described in the accompanying declaration, Source's counsel had personal knowledge that the claim construction was not contradicted by the prosecution of the '276 Patent.   In addition, Astra engaged in litigation abuse, as it:

- had no evidence of infringement prior to suit.

- continued to request discovery even after it was clear that there was no infringement.

- objected repeatedly to the Court's efforts to streamline litigation.

- needlessly prolonged litigation.

- had its appeal summarily affirmed by the Federal Circuit.

No such circumstances are present here.   Source conducted itself in this litigation efficiently and fairly.   Finally, the Court also concluded that Astra's purpose in bringing and continuing the litigation was to block all competing products.   That is not the case here; Source regularly competes with many other products in the marketplace.

The other case cited by the Court, *Eon-Net LLP v. Flagsta Bancorp*, 653 F.3d 1314 (Fed. Cir. 2011), is completely inapposite, since claim construction was not the basis for imposition of sanctions; in fact, the plaintiff there did not offer construction of any disputed claim terms at all, and the Court specifically found that plaintiff deliberately attempted to evade a careful analysis of the claim terms through the *Markman* process, and failed to engage the claim construction process in good faith.   In that case, the

sanctions were based <u>almost entirely</u> on improper litigation tactics, and not on the incorrect claim construction.  In that case, the sanctions were based on plaintiff's:

- destruction of relevant documents prior to the initiation of its lawsuit.

- intentional failure to implement a document retention plan.

- discarding of all documents from another infringement action, even though it had other pending cases.

- lodging incomplete and misleading extrinsic evidence with the court.

- submission of declarations that contradicted earlier testimony by the declarants.

- display of a "lack of regard for the judicial system" and "cavalier attitude" towards the patent litigation process as a whole.

In addition to the above, the Court there found that plaintiff filed the lawsuit in bad faith and for an improper purpose, and that case had 'indicia of extortion' because it was part of Eon-Net's history of filing nearly identical patent infringement complaints against a plethora of diverse defendants, where Eon-Net followed each filing with a demand for a quick settlement at a price far lower than the cost to defend the litigation. *Eon-Net, Id.* at 1326.  No such circumstances exist here.

It is not merely, as the Court noted, that Source's conduct here "does not approach the egregiousness of the conduct" in those other cases.  (Doc. No. 52 at 9).  Rather, ***that egregiousness was the very reason for sanctions in those other cases***.  However, there is no finding that Source engaged in improper litigation tactics, or filed the present lawsuit for an improper purpose.  Indeed, Source even exhibited prudent legal judgment when it withdrew a count of false marking of Hydrapak's product from the original complaint after the passing of the America Invents Act.

This case is more akin to *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295 (Fed. Cir. 2004), discussed above.  As in *Q-Pharma*, here Source "obtained a sample of the accused product…and, most importantly, compared the claims of the patent with the accused product."  *Q-Pharma*, 360 F.2d at 1302-3.  Having shown that it engaged in a reasonable, good faith, pre-filing claim construction and infringement investigation, Source requests that the Court reconsider its imposition of sanctions.  See also, *Brooks Furniture Mfg., Inc. v. Dutailier Intern., Inc.*, 393 F.3d 1378, 1384 (Fed. Cir. 2005) (reversing an award of attorneys' fees against the patentee plaintiff, where there was no showing of bad faith by plaintiff in asserting the patent).

**C.      Source's Claim Construction was Reasonable**

It will be recalled that Source construed the claim element "the slot being narrower than the diameter of the rod, so that the sealer is only to be slidingly mounted sideways over the rod" to mean that "the slot is narrower than the diameter of the rod *together with the container folded over it*, so that the sealer is only to be slidingly mounted sideways over the rod and the container."

The Court stated that "Source did not draft the claim to compare the size of the slot with the diameter of the rod together with the folded over container."  (Doc. No. 52 at 4).  However, interpreting a claim in a vacuum cleared of the context of file history, prior art, and the very purpose of the invention is not consistent with Federal Circuit case law.  Therefore, although the Court disagreed with Source's claim construction, Rule 11 sanctions were improper since that construction was not objectively unreasonable.

### 1.    It was Not Improper for Source to Consider the Purpose of the Limitation at Issue in its Claim Construction

The Court stated that "claim construction is a function of the words of the claim, not the 'purpose' of the invention," and disregarded support for Source's claim construction drawn from the stated and inherent purpose of the invention. (Doc. No. 52, at 4, emphasis added). However, Source's approach was consistent with Federal Circuit case law that claim construction should take into consideration the purpose of the limitation when stated in the claim. See, e.g., *Arthrocare Corp. v. Smith & Nephew, Inc.*, 406 F.3d 1365, 1375 (Fed. Cir. 2005) (referring to "the whole point of the patent" in construing a claim limitation). In *Cohesive Technologies, Inc. v. Waters Corporation*, 543 F.3d 1351, 1368 (Fed. Cir. 2008) (citations and quotations omitted; emphasis added), the Federal Circuit construed the term "about" in terms of a numerical range, reasoning that:

> In determining how far beyond the claimed range the term "about" extends the claim, "[w]e must focus . . . on the criticality of the [numerical limitation] to the invention." In other words, *we must look to the purpose that the "about 30 μm" limitation serves*, to determine how much smaller than 30 μm the average particle diameter can be and still serve that purpose. To be clear, *it is the purpose of the limitation in the claimed invention--not the purpose of the invention itself--that is relevant*. Thus, we ask what function the "about 30 μm" low-end limit on particle size plays in the operation of the claimed apparatus and method.

It is the same here. The purpose of the limitation at issue was to allow the sealer to only to be slidingly mounted sideways over the rod, in order to hermetically seal the container. Based on this essential purpose of the patent claim, the relevant relationship was between the slot and the rod *after* the container was folded over it.

By granting sanctions, the Court is effectively ruling – contrary to Federal Circuit case law – that the purpose of a claim limitation has no place in claim construction.

When the limitation's purpose is properly considered, Source's proposed construction does not "violat[e] nearly every tenet of claim construction" or amount to "a wholesale judicial rewriting of the claim" (Doc. No. 52 at 4), but is reasonably consistent with the claim language and specification.

### 2.    Source's Claim Construction was Consistent with the Claim and the Specification

The Court also based its decision on its belief that Source's proposed construction was contradicted by the specification; however, there is sufficient basis in the specification to support Source's construction.  (Doc. No. 52 at 5).  The specification describes how the sealer functions:

> In order to seal container 100, extension 104 is ***wrapped over rod 114*** and elongated member 118 is ***slidingly mounted over rod 114 and the wrap***. As mentioned herein before, elongated member 118 is mounted over the rod by ***sliding the rod and wrap into the cavity of elongated member 118 from one of it sides***… In a preferred embodiment of the present invention ***the space defined within the passage in the sealer is not smaller than the total space occupied by the portion of the container provided with the lateral opening folded over the rod and the rod itself when inserted in the passage, and the slot is not narrower than the total thickness of the folded portion of the container and the adjacent portion when inserted through the slot***.

(Col. 8, line 52 – col. 9, line 6 (emphasis added)).  This portion of the specification, and others, make clear that the container is to be wrapped around the rod, and that the sealer is to be slidingly mounted over the rod together with the container.

Indeed, this action of wrapping the container around the rod is recited in claim 1 itself, which recites:

> a ***sealer*** comprising an elongated rigid member having two opposite sides along which a hollow cavity is extended with a ***longitudinal slot*** wherein said slot is adapted to accommodate said two films, wherein the sealer is

> provided with an opening on at least one of the opposite sides with a broadening **for inserting an end of the rod into the cavity when the portion of the container is folded over the rod into the hollow passage**, the slot being narrower than the diameter of the rod, so that the sealer is only to be slidingly mounted sideways over the rod.

(Col. 10, lines 33-42 (emphasis added).)

Source's construction reasonably read the claim language "when the portion of the container is folded over the rod into the hollow passage" as applying equally to the result that the "sealer is only to be slidingly mounted sideways over the rod."

### 3.      *Source's Claim Construction Was Not Contradicted by the File History*

The Court ruled that Source "unequivocally disclaimed" products having a slot wider than the diameter of the rod.  (Doc. No. 52 at 4).  This is emphatically not the case, since Source did not argue to the USPTO that the claim was allowable because the slot was narrower than the diameter of the rod.  And indeed, as described in the October 6, 2011 letter sent to Hydrapak, the Dikeman prior art already disclosed this element. Therefore, it was reasonable for Source to interpret this element in its intended context, i.e., ensuring that the sealer is only to be slidingly mounted sideways over the rod, which Hydrapak's sealer undoubtedly does.

The Court has misunderstood Source's response to the Dikeman reference, as set forth in the October 6, 2011 letter.  (Doc. No. 52 at 5).  The relevant language from the October 6, 2011 letter, in its entirety, is as follows (bold emphasis added; other emphasis original):

> Finally, the sole claim language that we understand to be in dispute is "the slot being narrower than the diameter of the rod, so that the sealer is only to be slidingly mounted sideways over the rod."   We understand

Hydrapak's argument to be that its rod is so small that the slot of the sealer is not narrower than the diameter of the rod. However, this is an incorrect reading of the claim. The full claim language says "the slot being narrower than the diameter of the rod, *so that the sealer is only to be slidingly mounted sideways over the rod*," i.e., when the container is being closed. A comparison between the rod alone and the slot is meaningless, and ignores the file history in the context of which the claim language was written. The claim must be interpreted to require the slot to be narrower than the rod *together with the thickness of the container folded over it*, so that the sealer cannot be snapped over the top of the rod (with the container folded over it), but rather, *so that the sealer is only to be slidingly mounted sideways over the rod*. Indeed, this, too, is present in the Hydrapak reservoir: after all, **the sealer is only to be slidingly mounted sideways over the rod in order to close the reservoir**.

**We note that this language was introduced to differentiate from the Dikeman reference (U.S. Pat. 5,913,456), which disclosed a rod that was forced into place in the channel**. (See Dikeman, col. 4, line 66 – col. 5, line 4). Therefore, we disagree with your attorneys that this amendment means that by introducing catches, the Hydrapak reservoir does not infringe. The mechanism by which Hydrapak's sealer closes the reservoir – i.e., by only slidingly mounting the sealer sideways over the rod – is identical to the claimed structure.

(Doc. No. 45-1 at page 9). The Court construed this to mean that Source somehow admitted that relating the size of the slot to the diameter of the rod was introduced to differentiate from Dikeman. (Doc. No. 52 at 5). However, the phrase "this language" clearly refers to the emphasized claim language in the previous paragraph, i.e., "*so that the sealer is only to be slidingly mounted sideways over the rod*" since that is what distinguishes from Dikeman, which disclosed a rod that was forced into place in the channel.

Indeed, not even Hydrapak argues that the phrase "the slot being narrower than the diameter of the rod" was introduced into claim 1 to differentiate from Dikeman. Rather, as clearly stated in the October 6, 2011 letter, the linchpin of the prosecution history was actually the phrase "so that the sealer is only to be slidingly mounted

sideways over the rod." (See Doc. No. 15-3 at 081, 087-088).  And there is no dispute that Hydrapak's sealer operates precisely in this manner.

Accordingly, the statement in the October 6, 2011 letter is not an admission that the phrase "the slot being narrower than the diameter of the rod" was added for reasons related to patentability, and cannot justify finding Source's claim construction unreasonable or frivolous.

### 4.       *Source's Claim Construction Properly Avoids a Nonsensical Result*

The Court further nullified Source's arguments that the construction avoids a nonsensical result.  (Doc. No. 52 at 5).  However, interpreting patent claims so as to make sense has been recognized by Federal Circuit case law.   Indeed, this very Court has recognized that "***claim language should be read in a manner that causes the claim to make sense***." *Joao v. Sleepy Hollow Bank*, 418 F. Supp. 2d 578, 581 (S.D.N.Y. 2006, emphasis added) (McMahon, J.).  In an earlier decision in the same matter, this Court further recognized that:

> …plain English grammar and syntax are not always endorsed by either patent examiners or courts interpreting patents. My personal favorite example of this phenomenon is the word "one," which in plain English means "one and no more than one" but which in patent English means "one or more than one," or "at least one." I do not understand why this is so, but I know that it is so, and I have applied that principle on more than one occasion -- indeed, I will apply it again later in this opinion. ***So I accept the proposition that it is perfectly proper to ignore English grammar and syntax when interpreting patent claim language -- at least, when context renders a different reading more sensible***.

*Joao v. Sleepy Hollow Bank*, 348 F. Supp. 2d 120, 124-25 (S.D.N.Y. 2004) (McMahon, J.) (emphasis added).  Such is the case here.  In the context of claim 1, it is reasonable to

construe the limitation at issue to take into account the portion of the container folded over the rod.

In its decision, the Court relied on *Chef America, Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371 (Fed. Cir 2004).  (Doc. No. 52 at 5).  However, it was not unreasonable for Source to distinguish the cases.  There, the Federal Circuit reiterated that where a claim is susceptible to only one reasonable interpretation, and that interpretation results in a nonsensical construction of the claim as a whole, the claim must be invalidated.  Here, the issue at stake was not claim invalidity, and the limitation at issue was not (in Source's determination) susceptible to only one reasonable interpretation.  Source reasonably believed that its construction, encompassing the folded over portion of the container, was consistent with the stated purpose of the limitation, *viz.*, to hermetically seal the container only by sliding the sealer, not forcing it.  That the Court disagreed with Source's construction does not make it unreasonable.

Nor does *Becton, Dickinson & Co. v. Tyco Healthcare Group, LP*, 616 F.3d 1249 (Fed. Cir. 2010) contradict the reasonableness of Source's construction.  (Doc. No. 52 at 5).  There, the Federal Circuit rejected a claim construction which would have rendered the claim nonsensical, and created a physical impossibility.  Here, Source is not urging a claim construction that would create a physical impossibility.

**D.    Source's Arguments Regarding the Doctrine of Equivalents Were Not Unreasonable**

Even assuming the Court's interpretation of claim 1, i.e., that the rod alone is to be compared to the slot, Source has a reasonable basis for arguing that Hydrapak's Reversible Reservoir II infringed under the doctrine of equivalents.  The Court disagreed,

holding that prosecution history estoppel applies, and that finding infringement would result in claim vitiation.  Although the Court disagreed with Source's arguments, as discussed below, they were founded on the facts and on valid Federal Circuit case law.

### 1.      The Prosecution of the '276 Patent Did Not Create Relevant Estoppel

The Court's decision simplified the prosecution history of the '276 Patent, and misconstrued Source's arguments in this regard.  As the file history shows, and as clearly set forth by the accompanying declaration, the size comparison between the slot and the rod was **not introduced to overcome Dikeman**.

The court's holding that Source "concedes that the width of the sealer's slot narrowed when it amended claim 1 . . . in response to an obviousness rejection over the Dikeman reference" is factually incorrect and contrary the evidentiary record.  (Doc. No. 52 at 6).  Rather, the claim amendment made in response to the obviousness rejection over Dikeman was "an opening <u>in the form of substantially parallel lips . . . the distance between the lips allowing the sealer to be mounted only slidingly sideways over the rod.</u>" (Doc. No. 18 at 21, see Doc. No. 15-3 at 081).  The combination of Dikeman and Senanayake was distinguished as follows:

> [C]laim 13 recites "the distance between the lips allowing the sealer to be mounted **only sliding sideways** over the rod." Even if the structure disclosed in the Dikeman reference permitted the rod to be slidingly mounted into the channel - and Applicant believes it did not - there is certainly no disclosure that the distance between the lips allow the sealer to be mounted **only sliding sideways** over the rod.
>
> * * *
>
> [I]t is evident that both Dikeman and Senanayake suggest a sealer that is pressed against the rod over its entire length, **snapping it into position** (Dikeman) or holding it by a third element (Senanayake).

(Doc. No. 18 at 21, see Doc. No. 15-3 at 088-089 (emphasis added)).  ***Nothing in the amended language relates to the width of the slot versus that of the rod***.  The point of the amendment is to limit the claim to a "mounting only sliding sideways" closure.

It was only after the Examiner indicated that the art of record had been overcome and the claim recited allowable subject matter, that Source amended the claim by deleting the phrases "in the form of substantially parallel lips" and "thereby preventing liquid in said container from passing through the lateral opening."   (Doc. No. 15-3 at 107).  Nothing in the amendment (or in the prosecution history) suggests the claim language "the slot being narrower than the diameter of the rod" was added to overcome a rejection, or for any reason related to patentability.  There was no clear intent to change the scope of the claim, nor was there any reason to do so, as the prior art had already been overcome.

Thus, Source was not unreasonable in believing that a range of equivalents was available for the "slot being narrower than the diameter of the rod."


### 2.     *Source Reasonably Believed that its Claim Construction Does Not Result in Claim Vitiation*

The Court also held that encompassing Hydrapak's product within the range of equivalents would vitiate a claim element in its entirety.  Specifically, the Court's basis for applying claim vitiation was that a finding that Hydrapak infringes claim 1 would result in infringement by a product having "a slot *wider*, not *narrower*, than . . . the rod." (Doc. No. 52 at 7, emphasis in original).

However, it is axiomatic that in applying the doctrine of equivalents, at least one claim limitation is not literally found – and possibly contradicted – and yet the accused

product infringes.  Therefore, this fact in itself cannot be sufficient to trigger the doctrine of claim vitiation.

A leading case in point in this regard is *U.S. Philips Corp. v. Iwasaki Electric Co. Ltd.*, 505 F.3d 1371 (Fed. Cir. 2007).  In that case, the claim at issue required that a halogen be present in a quantity between $1 \times 10^{-6}$ and $1 \times 10^{-4}$ μmol/mm$^3$, i.e., ***less*** than $1 \times 10^{-4}$.  The relevant quantity in the accused product was between 2.0 and $1.2 \times 10^{-4}$, i.e., ***greater*** than $1 \times 10^{-4}$.  The District Court (Hon. Judge Castel) reasoned – as did the Court in this case – that a finding of infringement would vitiate the claim limitation, and foreclosed the patentee's resort to the doctrine of equivalents as a matter of law.  That is, the Court there ruled, as did the present Court, that to say that $2.0 \times 10^{-4}$ is equivalent to less than $1 \times 10^{-4}$ would vitiate the claim element.

The Federal Circuit vacated the decision, and ***expressly distinguished*** *Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091 (Fed. Cir. 2000) and *Asyst Techs. Inc. v. Emtrak, Inc.*, 402 F.3d 1188 (Fed. Cir. 2005), on which the present Court based its decision (Doc. No. 52 at 7).  Rather, the Federal Circuit explained that the "doctrine" of claim vitiation merely stated a conclusion that no reasonable jury could find that the accused product was equivalent to the claim at issue.  *U.S. Philips Corp.*, *Id.*, at 1378-1379.  The Federal Circuit remanded the case to the district court with an instruction to consider the equivalence of every case of infringement on its merits.  See also, *Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*, 616 F.3d 1283 (Fed. Cir. 2010) (recitation of a specific numerical value does not by itself foreclose the application of the doctrine of equivalents)

In this case, it is undisputed based on Hydrapak's own engineering drawings, that the slot is narrower than the rod together with the folded-over container.  It was not unreasonable for Source to believe that a jury may decide that Hydrapak's small rod – which, taken with the outer catches is ***unquestionably wider than the slot*** – is equivalent to the rod alone being wider than the slot, as claimed.  In light of the foregoing, Source's application of the doctrine of equivalents did not run unreasonably afoul of the doctrine of claim vitiation.

**E.      Conclusion**

Source did in fact conduct a thorough claim construction and infringement investigation before filing the complaint; it had no bad faith or improper motives for the litigation, nor did it engage in litigation misconduct; and its legal positions on claim construction and the doctrine of equivalents were not unreasonable.  Source requests that the portion of the Court's April 11 decision imposing sanctions be reconsidered.

Dated: April 18, 2012                          Respectfully submitted,

                                               PEARL COHEN ZEDEK LATZER LLP

                                               By:          /s/ Guy Yonay
                                               Guy Yonay (GY-3028)
                                               GuyY@pczlaw.com
                                               Clyde A. Shuman (CS-6351)
                                               ClydeS@pczlaw.com
                                               1500 Broadway, 12th Floor
                                               New York, NY 10036
                                               Tel: (646)878-0800
                                               Fax: (646)878-0801

                                               *Attorneys for Plaintiff*
                                               *Source Vagabond Systems Ltd.*

## CERTIFICATE OF SERVICE

I, Guy Yonay, hereby certify that I caused a true and correct copy of the attached

pleading to be served on counsel of record via the Court's ECF filing system this 18th day of

April, 2012.


  /s/ Guy Yonay_____
              Guy Yonay, Esq.