**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------

SOURCE VAGABOND
SYSTEMS LTD.,

               Plaintiff,

        v.

HYDRAPAK, INC.,

               Defendant.

-------------------------------------------------

Case No. 11-CIV-5379 (CM) (JLC)

**ECF CASE**

**DECLARATION OF GUY YONAY IN SUPPORT OF SOURCE'S MOTION FOR RECONSIDERATION OF RULE 11 SANCTIONS**

I, Guy Yonay, declare and state:

1.      I am a partner at the law firm Pearl Cohen Zedek Latzer LLP.

2.      I make this declaration in support of plaintiff Source's motion for reconsideration of the Court's decision of April 11, 2012 granting defendant Hydrapak's motion for sanctions pursuant to Fed. R. Civ. P. 11.

## I.      Professional Background

3.      I graduated with a bachelor's degree in electrical engineering from The Cooper Union for the Advancement of Science and Art (1993) and a juris doctor from Harvard Law School (1996).

4.      I am admitted to practice in the courts of New York State, and in the Southern and Eastern Districts of New York.  I am also registered to practice with the United States Patent and Trademark Office.

5.      I have practiced law as a litigation associate at Fried, Frank, Harris, Shriver, and Jacobson LLP and at Darby & Darby.

6.      I have been a partner with my present firm since 2005.

7.      I am familiar with my professional and ethical obligations under New York law and under Rule 11 of the Federal Rules of Civil Procedure.

8.      Throughout my career as an attorney, I have taken these obligations with the utmost seriousness, and neither I nor any firm client (while represented by us), has ever been sanctioned for unethical conduct or accused of such.

9.      Based on the above, my 15 years of experience in the practice of law, and my dedication to professionalism, I view the Court's decision granting Hydrapak's motion for sanctions under Rule 11 against my client Source Vagabond Ltd. with gravity.

## II.      Pre-Filing Claim Construction of the '276 Patent

10.      In order to determine whether Hydrapak infringes Source's U.S. Patent No. 7,648,276 (the " '276 Patent"), on July 26, 2011, I personally purchased a sample of Hydrapak's Reversible Reservoir II at Innovation Bike Shop, at 105 W. 106th St., New York, NY 10025.  (A copy of the receipt from that purchase was attached as Exhibit A to my declaration submitted in connection with Source's opposition to Hydrapak's motion for sanctions.)

11.      I was already very familiar with the '276 Patent, since I was involved in prosecuting the patent before the United States Patent and Trademark Office. Nevertheless, before filing the original complaint on August 2, 2011, I reviewed again the specification, claims, and file history of the '276 Patent, and based on these, I construed the relevant terms of claim 1.

12.     I was aware of the claim language "wherein the sealer is provided with an opening on at least one of the opposite sides with a broadening for inserting an end of the rod into the cavity when the portion of the container is folded over the rod into the hollow passage, the slot being narrower than the diameter of the rod, so that the sealer is only to be slidingly mounted sideways over the rod."

13.     As described in detail below, before filing the complaint, I concluded that claim 1 should be construed to mean that the relevant comparison should be between the width of the slot and the thickness of the rod when the container was folded over it, and I concluded that the Reversible Reservoir II infringed claim 1.  I also concluded that even if this claim construction was not adopted, the Reversible Reservoir II infringed claim 1 under the doctrine of equivalents.


### A.     Claim Language

14.     Immediately preceding the thickness limitation, the claim expressly states that the slot is "for inserting an end of the rod into the cavity *when the portion of the container is folded over the rod into the hollow passage*[.]"

15.     I concluded that the limitation as a whole should be understood in light of this express language, such that the relevant comparison is between the slot and the diameter of the rod and the container, so that the sealer is only to be slidingly mounted sideways over the rod when the portion of the container is folded over the rod.

**B.      Specification**

16.      Based on the specification of the '276 Patent, the container is sealed by folding a portion of the container over the rod and sliding the rod and folded-over portion into the cavity of the sealer from one end.  Preferably, the cavity of the sealer is larger than the space occupied by the combination of the rod and the folded-over portion of the container, and the slot is not narrower than the total thickness of the folded over portion of the container and adjacent portion, when inserted through the slot.  (*Id.*, col. 8, line 52 – col. 9, line 6).

17.      Therefore, the sealer is only ever slid across the rod when the container is folded over it; that is, there is no seal if the sealer is slid across the rod without the container.  It would be meaningless to compare the rod to the slot in the sealer without accounting for the thickness of the container, since the thickness of the container is essential to creating a seal.

**C.      File History and Prior Art**

18.      The prior art and file history of the '276 are consistent with my above pre-filing claim interpretation.  Specifically, the USPTO examiner's rejection based on Dikeman and the subsequent amendment was <u>not</u> about the relative dimensions of the rod and the slot.

19.      As shown in the below Figure 7 of the Dikeman reference, ***the prior art already disclosed that the slot was narrower than the diameter of the rod***.



Fig. 7.

20.     Therefore, the slot being narrower than the rod could clearly **not** have been the reason that the Examiner allowed the claim.

21.     Rather, as I knew from my own discussions with the Examiner who allowed the claims, the aspect of Source's invention that persuaded the Examiner to allow the patent application was the **manner** in which the sealer was to fit over the rod, i.e., "so that the sealer is **only to be slidingly mounted sideways over the rod**."

22.     Specifically, Source showed that Dikeman did not disclose a sealer slidingly mountable over the rod as recited in the claim, and that it was impossible to slidingly mount the channel of Dikeman over the rod, because the rod has protrusions at both ends.  Therefore, not only did Dikeman not disclose a sealer that is "slidingly mountable" over the rod, but Dikeman in fact taught away from this arrangement.

23.     The claim was later amended to recite a sealer with "to be mounted only slidingly sideways over the rod."  The combination of Dikeman and Senanayake was distinguished as follows:

> [C]laim 13 recites "the distance between the lips allowing the sealer to be mounted **only sliding sideways** over the rod." Even if the structure disclosed in the Dikeman reference permitted the rod to be slidingly mounted into the channel - and Applicant believes it did not - there is

certainly no disclosure that the distance between the lips allow the sealer
to be mounted *only sliding sideways* over the rod.

*        *        *

[I]t is evident that both Dikeman and Senanayake suggest a sealer that is
pressed against the rod over its entire length, ***snapping it into position***
(Dikeman) or holding it by a third element (Senanayake).

24.     Supporting this argument, the inventor, Yoram Gill, submitted a

declaration to the USPTO that in his invention, the sealer can ***only*** be slidingly mounted

over the rod:

> 10.     Dikeman's device employs a closure assembly which has an
> Omega-shaped cross-section. He describes that "as illustrated in Fig. 8, the
> closure assembly is placed in the sealed position by positioning the
> container between the channel element 68 and the rod element 70 and
> ***forcing*** the body 80 of the rod element and the material of the container
> past the opening 76 into the channel 74 along the length of the channel"
> (col. 4 line 66 – col. 5 line 4).

> 11.     I believe that his sealer (the closure device) is inferior to the sealer
> of the present invention. Constant ***forcing*** of the rod in and out of the
> closure is not practical and bound to inflict irrecoverable damage to the
> closure, as it is deformed constantly. Furthermore, in order to be able to
> use Dikeman's closure device the closure must be flexible enough to allow
> the lips of the closure to retract and let the rod when forced in. This will
> dramatically reduce the level of sealing and may consequently result in a
> product that would most likely leak when used.

25.     Source further showed that even if Dikeman allowed sliding the sealer

over the rod sideways, this was not the only way to seal the reservoir of Dikeman,

whereas in the claimed invention, this was the ***only*** way to seal the reservoir.

26.     After this argument, the Examiner agreed that the claim recited allowable

subject matter, but rejected the claim based on the basis of 35 U.S.C. § 112.  The claim

was then amended to its final form.

27.     Based on the above information and analysis, which I considered ***prior*** to

filing the complaint, I concluded that I had properly construed the claim, since Source did

6

not argue that the claimed invention was patentable for the reason that the claimed slot was narrower than the rod.

28.     I concluded that the above construction of claim 1 as taking into account both the rod and the container folded around it was consistent with Federal Circuit caselaw that the claim be interpreted in the context of the entire patent, including the specification and the file history.

### III.     Pre-Filing Infringement Determination

29.     My initial observation when I purchased Hydrapak's Reversible Reservoir II was its similarity in form and function to Source's own patented sealable container system.

30.     I then proceeded to perform a claim analysis comparing the Reversible Reservoir II to claim 1, as construed above.

31.     Claim 1 of the '276 Patent recites:

1.   A sealable flexible liquid container system comprising:

   a flexible liquid container having a cavity for receiving liquids, said cavity formed of two films having the majority of their perimeter fused, and a portion of the perimeter unfused so as to present a lateral opening for filling the container with liquids, and a liquid dispensing outlet;

   a rod having a first end and a second end, fixedly attached to the container laterally across the lateral opening of the flexible container so that a portion of the container adjacent the lateral opening can be folded over the rod and substantially overlap an adjacent portion of the container; and

   a sealer comprising an elongated rigid member having two opposite sides along which a hollow cavity is extended with a longitudinal slot wherein said slot is adapted to accommodate said two films, wherein the sealer is provided with an opening on at least one of the opposite sides with a broadening for inserting an end of the rod into the cavity when the portion of the container is folded over the

7

rod into the hollow passage, the slot being narrower than the
diameter of the rod, so that the sealer is only to be slidingly
mounted sideways over the rod.

32.     There was no doubt in my mind that the Reversible Reservoir II is sealable

flexible liquid container system, as in the preamble.

33.     The Reversible Reservoir II included a flexible liquid container having a

cavity for receiving liquids, said cavity formed of two films having the majority of their

perimeter fused, and a portion of the perimeter unfused so as to present a lateral opening

for filling the container with liquids, and a liquid dispensing outlet.

34.     The rod of the Reversible Reservoir II has a first end and a second end,

fixedly attached to the container laterally across the lateral opening of the flexible

container so that a portion of the container adjacent the lateral opening can be folded over

the rod and substantially overlap an adjacent portion of the container.

35.     The sealer of the Reversible Reservoir II comprises an elongated rigid

member having two opposite sides along which a hollow cavity is extended with a

longitudinal slot.  The slot is adapted to accommodate the two films, and is provided with

an opening on at least one of the opposite sides with a broadening for inserting an end of

the rod into the cavity when the portion of the container is folded over the rod into the

hollow passage.

36.     The sealer and container are clearly designed such that that the sealer is

only to be slidingly mounted sideways over the rod.

37.     In this regard, I knew that the critical claim element that was argued

during prosecution to overcome the prior art was that the "sealer is only to be slidingly

mounted sideways over the rod."  Accordingly, I recognized that there may be limits on

equivalents of this limitation (the "sealer is only to be slidingly mounted sideways over

the rod"), but I noted that the sealer of the Reversible Reservoir II was indeed *only* to be slidingly mounted sideways over the rod.  Therefore, this element was met literally, and no recourse to the doctrine of equivalents was required.

38.     The only claim language as to which there could possibly be any doubt was the "slot being narrower than the diameter of the rod, so that the sealer is only to be slidingly mounted sideways over the rod."

39.     In this regard, I observed the dimensions of the Reversible Reservoir II, including the thickness of the rod and the outer catches when the sides of the container were folded over the rod, and the width of the slot in the sealer relative to each other.

40.     It was clear to me that the slot was not narrower than rod alone; however, when the container was folded over the rod as intended, the slot *was* narrower than the rod together with the catches on the outside of the container.  The manner of operation was similar to the claim in that this prevented the sealer from being forced over the top of the container, but rather required that the container be closed only by mounted the sealer sideways over the rod.

41.     Since I construed the claim to mean that the relevant comparison should be between the width of the slot and the thickness of the rod when the container was folded over it, I concluded that the Reversible Reservoir II literally infringed the claim.

42.     Moreover, even if this proposed claim construction was not adopted, and the comparison was between the slot and the rod alone, I concluded that the claim language "the slot being narrower than the diameter of the rod" would not be the subject of a complete bar on equivalents, since it was not amended in an attempt to overcome the prior art, and furthermore, this difference between the claim and the Reversible Reservoir

9

II (i.e., moving thickness from the rod to the lip catches) was insubstantial.  Therefore, I concluded that even if the Court did not adopt my claim construction, the Reversible Reservoir II infringed claim 1 of the '276 Patent under the doctrine of equivalents.

43.    Based on the above analysis, I concluded that the Reversible Reservoir II infringed claim 1 of the '276 Patent, either literally or, in the alternative, under the doctrine of equivalents.


**IV.    Conduct of the Litigation**

44.    Throughout this litigation, I believed in good faith that Source's arguments were supported by facts and by a reasonable legal theory, and no submission I made on behalf of Source was made for any improper purpose.

45.    As one example, the original complaint, filed on August 2, 2012, included a count for false marking based on Hydrapak's marking the Reversible Reservoir II with "patent pending" even though the claims of Hydrapak's issued patent do not cover the product.

46.    On September 16, 2011, the Leahy-Smith America Invents Act (AIA) was signed into law, including provisions changing the pleading standards for false marking claims.

47.    Source dropped this cause of action, and in the amended complaint filed October 6, 2011, Source maintained only the patent infringement claim.

**V.     Conclusion**

48.     I have not previously provided the Court with the above pre-filing analysis in detail, because the litigation was ongoing, and the above was confidential work product in anticipation of litigation.  However, the Court now having ruled against this construction of claim 1, Source has agreed that I disclose the above pre-filing analysis.

49.     ***I believed at all times in good faith based on my professional opinion at the time the complaint was filed – and throughout the litigation – that I had properly construed claim 1, and that the Reversible Reservoir II infringes the claim either literally or under the doctrine of equivalents***.


I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on April 18, 2012, in New York, New York.

                                        _____/s/ Guy Yonay_____
                                        Guy Yonay