UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

------------------------------------------------------------- x

SOURCE VAGABOND SYSTEMS LTD.,                :
                                                             :          Case No. 11-CIV-5379 (CM) (JLC)
                        Plaintiff,                           :
                                                             :          ECF CASE
                - against -                                  :
                                                             :          ELECTRONICALLY FILED
HYDRAPAK, INC.,                                              :
                                                             :
                        Defendant.                           :
------------------------------------------------------------- x

---

## HYDRAPAK INC.'S MOTION FOR ATTORNEY FEES AND COSTS

---

**DAVIS WRIGHT TREMAINE LLP**
**1633 Broadway**
**New York, New York 10019**
**(212) 489-8230**

**Attorneys for Defendant Hydrapak, Inc.**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF FACTS RELEVANT TO THIS MOTION ........................................ 2

III.    HYDRAPAK'S REQUESTED FEES AND COSTS SHOULD BE
        AWARDED AS SANCTIONS .............................................................................. 8

        A.      Applicable Legal Standard ................................................................ 8

        B.      Hydrapak's Submitted Fees and Costs are Reasonable and
                this Court Should Award them .......................................................... 9

                1.      Hydrapak's Counsels' Rates were Reasonable ..................... 10

                2.      Hours Expended by Counsel were Reasonable ..................... 13

        C.      An Award of Hydrapak's Fees and Costs Are Justified ................. 14

IV.     CONCLUSION ................................................................................................ 16

DWT 19584212v3 0095884-000001

# **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,*
    369 F.3d 91 (2d Cir. 2008).................................................................................8, 10, 15

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,*
    493 F.3d 110 (2d Cir. 2007), *amended on other grounds by,* 522 F.3d 182 (2d Cir.
    2008)...................................................................................................................9

*Blanchard v. Bergeron,*
    489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989)................................................10

*Cooter & Gell v. Hartmarx Corp.,*
    496 U.S. 384 (U.S. 1990).............................................................................................2

*Edmonds v. Seavey,*
    No. 08 Civ. 5646(HB), 2009 WL 4404815 (S.D.N.Y. Dec. 2, 2009) ......................8

*Gierlinger v. Gleason,*
    160 F.3d 858 (2d Cir.1998)........................................................................................13

*Johnson v. Georgia Highway Express, Inc.,*
    488 F.2d 714 (5th Cir. Ga. 1974)................................................................................10

*Landmark Chems., SA. v. Merrill Lynch & Co.,*
    234 F.R.D. 62 (S.D.N.Y. 2005) ..................................................................................14

*Lawrence v. Wilder Richman Sec. Corp.,*
    417 Fed.Appx. 11 (2d Cir.2010)...........................................................................8, 15

*Malletier v. Apex Creative Int'l Corp.,*
    687 F. Supp. 2d 347 (S.D.N.Y. 2009).......................................................................12

*New York State Ass'n for Retarded Children, Inc. v. Carey,*
    711 F.2d 1136 (2d Cir.1983).......................................................................................9

*OZ Mgmt. LP v. Ozdeal Inv. Consultants, Inc.,*
    2010 U.S. Dist. LEXIS 138873 (S.D.N.Y. Dec. 6, 2010) ...................................11, 12

*Perdue v. Kenny A.*
    130 S. Ct. 1662 (U.S. 2010).......................................................................................10

*Phonometrics, Inc. v. Economy Inns of America,*
    349 F.3d 1356 (Fed. Cir. 2003)..................................................................................14

*Quaratino v. Tiffany & Co.,*
    166 F.3d 422 (2d Cir.1999).........................................................................................9

DWT 19584212v3 0095884-000001

*Refac Int'l. Ltd. v. Hitachi, Ltd*,
   921 F.2d 1247 (Fed. Cir. 1990).................................................................8

*Reiter v. MTA N.Y.C. Transit Auth.*,
   457 F.3d 224 (2d Cir.2006)...................................................................10

*Simmons v. New York City Trans. Auth.*,
   575 F.3d 170 (2d Cir. 2009)..................................................................10

*U.S. for Use and Benefit of Evergreen Pipeline Const. Co., Inc. v. Merritt Meridian
   Const. Corp.*,
   95 F.3d 153 (2d Cir. 1996)......................................................................9

*Union Planters Bank v. L & J Development Co.*,
   115 F.3d 378 (6th Cir. 1997) ................................................................14

*United States Football League v. National Football League*,
   887 F.2d 408 (2d Cir. 1989)..................................................................12

*Universal City Studios, Inc. v. Nintendo Co.*,
   615 F. Supp. 838 (S.D.N.Y. 1985).........................................................14

*View Eng'g, Inc. v. Robotic Vision Sys.*,
   208 F.3d 981 (Fed. Cir. 2000).........................................................14, 15

*Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.*,
   51 F. Supp. 2d 302 (S.D.N.Y. 1999).....................................................11

*Yurman Designs, Inc. v. PAJ, Inc.*,
   125 F. Supp. 2d 54 (S.D.N.Y. 2000).........................................11, 12, 13

## STATUTES

35 U.S.C. § 271 ......................................................................................3

35 U.S.C. § 292 ......................................................................................3

DWT 19584212v3 0095884-000001

## I.      INTRODUCTION

Plaintiff Source Vagabond Systems Ltd. ("Source Vagabond") filed a baseless patent infringement claim against its smaller competitor Hydrapak, Inc ("Hydrapak").  The claim, now dismissed, was plainly without any reasonable basis from the outset, as Judge McMahon has found in granting Hydrapak's Rule 11 motion.  But despite clear warnings, Source Vagabond stubbornly pursued its infringement claim in a misguided effort to gain an unfair advantage in the marketplace by seeking to intimidate Hydrapak and customers that Source Vagabond was losing to Hydrapak.  Along the way, Source Vagabond asserted objectively unreasonable arguments and continued to file unnecessary, burdensome and expensive motions, despite being notified on multiple occasions that its infringement claims were baseless.

Hydrapak, a small company with only about 9 employees, attempted to resolve this dispute with the utmost efficiency by initially sharply focusing its noninfringement arguments on one narrow but particularly glaring deficiency in Source Vagabond's infringement claim.  Hydrapak carefully explained to Source Vagabond from the beginning why its infringement theory was untenable and in violation of Rule 11.  Yet such explanations were repeatedly ignored by Source Vagabond and its counsel, who continued to pursue these claims despite being on clear notice that they were baseless.

Unsurprisingly, this Court disposed of Plaintiff's claims on summary judgment and awarded Hydrapak sanctions under Rule 11, finding that "this case is simply not close on the merits."  (D.I. 52 at 10.)  Source Vagabond's response to the Court's order was to further needlessly pile on and increase the expense of this litigation with an ill-considered motion for reconsideration, which the Court promptly denied.  Remarkably, Source Vagabond has now even filed a frivolous appeal of the grant of summary judgment, making clear that it has no intention of stopping its campaign of attempting to gain a competitive advantage on its smaller competitor

by needlessly inflicting legal fees and the burdens of litigation through the pursuit of a baseless infringement claim.

Hydrapak submits this petition for recovery of its reasonable fees and costs associated with Source Vagabond's baseless infringement allegations.[1]  Hydrapak has gone to great pains throughout this lawsuit to keep its attorneys' fees and costs to a minimum by litigating in an efficient, cost effective manner.  These efforts paid off as it successfully defended this litigation for a small fraction of the cost of an average patent infringement lawsuit.  Even so, the fees could have been far lower if Source Vagabond had not chosen to expand the scope of the litigation, even after repeatedly being put on notice that its infringement claim was contrary to firmly established canons of patent law, and without any merit whatsoever.  Of course, Hydrapak never should have been forced to incur <u>any</u> fees to defend a claim which, as Judge McMahon has found, had no objectively reasonable basis.  (D.I. 52, at 7-9.)

Hydrapak has reviewed its fees and costs, and exercised billing judgment to seek only fees and costs that were reasonably incurred as a direct result of Source Vagabond's violation of Rule 11.  Hydrapak respectfully requests that sanctions be awarded against Source Vagabond and its counsel in the amount of $260,179.74 in attorneys' fees and costs.

## II.    STATEMENT OF FACTS RELEVANT TO THIS MOTION

Hydrapak is a small California company that develops and markets advanced fluid delivery systems for personal use, including custom built hydration packs, water reservoirs, and sports water bottles. (D.I. 38 ¶ 2.)  The water reservoirs at issue in this lawsuit are used in a variety of sports and outdoor activities, including cycling, running, water sports and hiking. (*Id.*)

---

[1] Hydrapak limits this petition to fees and costs in the action before this District Court, as is proper under a Rule 11 fee petition.  It reserves its rights to seek its fees and costs incurred on appeal.  *See, e.g, Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384 (U.S. 1990).

Hydrapak competes in this market with brands such as CamelBak® and Platypus®. (*Id.*) Hydrapak employs only about 9 people. (*Id.*)  Around 2000, Hydrapak launched its original Reversible Reservoir™ product line, featuring a patented fold-top closure system. (*Id.* ¶ 3.)  In 2006, Hydrapak introduced the next generation Reversible Reservoir II™, featuring an innovative slider top closure system. (*Id.*)  The USPTO approved issuance of Hydrapak's pending patent application (No. 11/445,721) covering the unique slider top closure system utilized in the Reversible Reservoir II.  (*Id.*)  Hydrapak sells its products direct to consumers through its website, as well as through numerous distributors and retailers in the United States and abroad. (*Id.* ¶ 4.)

Hydrapak also acts as an original equipment manufacturer (OEM) for well-regarded companies such as BMW, DaKine, Evoc, Ergon, Fox, Berghaus, Scott, and others. (*Id.*) Hydrapak has recently acquired three new, high-profile customers—The North Face, adidas, and Salomon.  These same customers stopped purchasing Source Vagabond's OEM water reservoir in favor of Hydrapak's OEM water reservoir. (*Id.*)

On August 2, 2011, Source Vagabond filed a complaint alleging (1) that Hydrapak's Reversible Reservoir II directly infringed at least claim 1 of U.S. Patent No. 7,648,276 ("the '276 Patent") in violation of 35 U.S.C. § 271; and (2) that Hydrapak falsely marked this product as "Patent Pending" in violation of 35 U.S.C. § 292. (Compl., D.I. 1.)  Source Vagabond alleged that the '276 Patent covers its own product, the Widepack™ water reservoir.  (Id. ¶ 17.)  That same month, Hydrapak retained lead counsel in this matter, Eric Walters, Esq.  At that time, Mr. Walters was a partner at Morrison & Foerster LLP.[2]

---

[2] Eric Walters subsequently joined the law firm of Davis Wright Tremaine LLP effective April 19, 2012.

DWT 19584212v3 0095884-000001

Shortly thereafter, Source Vagabond issued a press release declaring that it had sued Hydrapak for patent infringement, and then sent thinly veiled threats to Hydrapak's customers that they may be next. (*See, e.g.*, D.I. 38, Ex. 1 at 5.)  Specifically, Source Vagabond sent copies of the press release to Hydrapak's customers, or otherwise notified Hydrapak's customers of Source Vagabond's patent infringement claim.  (*Id*. Exs. 1-5.)  These included former Source Vagabond customers who recently began purchasing a competing product from Hydrapak. (*See, e.g.*, *id*. ¶ 4 & Ex. 4.)  In many of these letters, Source Vagabond stated: "***At this time***, we have only sued Hydrapak (***and not its customers directly***) . . . ." (*See, e.g.*, *id*. Ex. 5 at 6) (emphasis added).  These threats and others would later require Hydrapak and its counsel to communicate with its customers regarding its position with respect to noninfringement, and progress of this litigation.

On August 24, 2011, counsel for Hydrapak sent counsel for Source Vagabond a letter announcing that it had recently been retained by Hydrapak. (D.I. 39 Ex. D.)  Counsel for Hydrapak asked whether Source Vagabond had served the complaint on Hydrapak. (*Id*.) Counsel for Source Vagabond wrote back the same day indicating that Source Vagabond had not served the complaint. (*Id*. Ex. E.)  About one week later, on September 2, 2011, Hydrapak sent Source Vagabond a detailed, six-page letter challenging the basis of Source Vagabond's complaint and the adequacy of its pre-filing investigation. (*Id*. Ex. F.)  Hydrapak asked Source Vagabond to explain why it believed, before filing the complaint, that it had a reasonable basis for pursuing its claims.  Hydrapak also warned Source Vagabond that it would pursue Rule 11 sanctions unless Source Vagabond withdrew the complaint by September 7, 2011, or else provided a convincing explanation as to why Source Vagabond had not violated Rule 11. (*Id*.)

Source Vagabond eventually responded to Hydrapak's letter. Yet it refused to explain its pre-filing basis for filing suit against Hydrapak, asserting in conclusory fashion that its complaint "is supported by the facts and law." (*Id*. Ex. G.) Source Vagabond then stated that it "will reserve its response to your letter at this time." (*Id*.)

Hydrapak served a motion for Rule 11 sanctions on Source Vagabond on September 16, 2011. (Walters Dec., Ex. E.) On October 6, 2011, Source Vagabond filed an amended complaint withdrawing its false marking claim, but not withdrawing or amending its patent infringement claim. (D.I. 4.)

On November 3, 2011, this Court held a case management conference with the parties. At the conference, Hydrapak, using the actual product at issue, explained to Source Vagabond and the Court why it clearly did not infringe. As the Court explained it its order, the deficiencies in Source Vagabond's literal infringement argument were immediately obvious: "[a]s Hydrapak's counsel argued at our first conference, the difference is apparent to the naked eye, and the tape measure leaves no room for doubt. It was thus not objectively reasonable to argue that the Reversible Reservoir infringed the '276 Patent literally." (D.I. 52 at 8.)

At the case management conference, Hydrapak informed the Court that although numerous grounds existed for Hydrapak to bring a dispositive motion, it would be filing a motion directed to a single element that was plainly missing from the accused Hydrapak product, which defeated the infringement claim as a matter of law and could dispose of the case quickly and efficiently. (Declaration of Eric Walters ¶ 7; D.I. 52 at 8.) At Hydrapak's request, the Court agreed to stay discovery pending resolution of Hydrapak's motion. (*See* Minute Entry for Initial Pretrial Conference Proceedings, dated 11/3/2011; Walters Dec., ¶ 7.)

DWT 19584212v3 0095884-000001

Hydrapak filed its summary judgment motion, focusing on the issue discussed at the case management conference.  (D.I. 11.)  Source Vagabond responded by not only opposing this narrow summary judgment motion, but also bringing its own cross motion for summary judgment of infringement. (D.I. 18, 21, 22.)  Source Vagabond's much broader motion required briefing on whether Hydrapak infringed multiple additional claim elements, further increasing Hydrapak's litigation costs.  (Walters Dec., ¶ 8; D.I. 30.)

By mid-December, Source Vagabond still had not withdrawn its Complaint. Accordingly, Hydrapak served an amended motion for sanctions (in response to Source Vagabond's amended complaint).  After the 21-day safe harbor period had elapsed under Rule 11(c)(2) and Source Vagabond had not withdrawn its complain, Hydrapak then filed its amended Rule 11 motion.  (D.I. 34.)

The Court ruled in Hydrapak's favor on its motions for summary judgment and for Rule 11 sanctions.  (D.I. 52.)   The Court first held that Source Vagabond's literal infringement claim failed as a matter of law, finding Source Vagabond's claim construction "convoluted" and noting that it was "impossible" for Hydrapak to infringe the claim.  (*Id.* at 5-6) (emphasis in original). As the Court further explained, even under Source Vagabond's own "strained" interpretation of the "plain vanilla language" in the patent claims, Hydrapak did not infringe.  (*Id.* at 5, 6, 8.)

The Court then held that Source Vagabond's argument that Hydrapak infringed under the doctrine of equivalents failed as a result of two legal doctrines:  claim vitiation and prosecution history estoppel.  *Id.*  The Court held that the "vitiation is obvious" because, *inter alia*, "wider, as the opposite of narrower, cannot be deemed its 'equivalent' as a matter of law . . . ."  (*Id.* at 7.) In so ruling, the Court cited a string of controlling Federal Circuit cases that had been cited to Source Vagabond by Hydrapak throughout this proceeding, including in the very first letter to

-6-

Source informing it that its claims were frivolous (D.I. 39-1 at 14), the Rule 11 motion initially

served on Source (Walters Dec., Ex. E), and the amended Rule 11 motion (D.I. 35 at 10.)  The

Court also held that Source Vagabond's equivalents argument failed as a matter of law under the

doctrine of prosecution history estoppel.  (D.I. 52 at 7.)

Judge McMahon further ruled that Source Vagabond violated Rule 11 by bringing a

patent infringement claim that had no objectively reasonable basis.  With respect to literal

infringement, the Court held that Source Vagabond's proposed interpretation of the patent claims

"*violates all the relevant canons of claim construction*" and that even under Source Vagabond's

own construction, Hydrapak did not infringe.  (*Id.* at 8.)   Indeed, the literal infringement claim

"lacked evidentiary support no matter how the claim was construed."  (*Id.*)  Moreover, the lack

of infringement was not a close call.  Instead "the difference was apparent to the naked eye, and

the tape measure leaves no room for doubt."  (*Id.*)

The Court also found that it was not objectively reasonable for Source Vagabond to argue

that Hydrapak infringed under the doctrine of equivalents.  (*Id.*)  Among other things, the Court

noted that it is "settled, under existing law, that a thing that is 'wider' than something else cannot

be deemed equivalent to a thing that is 'narrower' than something else."  (*Id.*)  As noted above,

the existing law cited by the Court included the same cases cited by Hydrapak in its first letter to

Source warning that its infringement claim violated Rule 11.  (*Compare* D.I. 52 at 7, 8 *with* D.I.

39-1 at 8.)  As a result, Source Vagabond's doctrine of equivalents claim and allegations are not

"warranted under existing law" and "lack evidentiary support." (*Id.*)

Source Vagabond then filed a motion for reconsideration of the Rule 11 ruling.  (D.I. 55.)

Hydrapak explained in its opposition that the motion for reconsideration was deficient in

multiple respects, including that it (1) cited the incorrect standard for Rule 11; (2) failed to cite or

apply the applicable standard for a motion for reconsideration, and instead engaged in improper

reargument; (3) failed to identify any controlling law or facts in the record that had been

overlooked by the Court as is required for a motion for reconsideration; and (4) improperly relied

on new facts and evidence, which is not allowed in a motion for reconsideration under governing

law.  (D.I. 63.)

The Court rejected the motion for "substantially the reasons discussed in defendant's

brief in opposition to the motion."  (D.I. 64 at 1.)  Judge McMahon further elaborated that a

motion for reconsideration "is not an appropriate vehicle for repetitive argumentation" and that

Source Vagabond's "attempt to introduce new factual material" that was available to it earlier

was "not a proper use of reargument."  (*Id.*)  Judge McMahon referred this matter for

determination on the amount of sanctions to be awarded.  (D.I. 53.)

## III.   HYDRAPAK'S REQUESTED FEES AND COSTS SHOULD BE AWARDED AS SANCTIONS

### A.   Applicable Legal Standard

Attorneys' fees can be recovered under Rule 11 in patent cases where the plaintiff files a

baseless infringement claim.  (D.I. 52); *Refac Int'l. Ltd. v. Hitachi, Ltd*, 921 F.2d 1247 (Fed. Cir.

1990) (remanding case to determine proper sanction under Rule 11 for filing baseless

infringement claim).  Courts have "broad discretion to tailor appropriate and reasonable

sanctions under Rule 11." *Lawrence v. Wilder Richman Sec. Corp.*, 417 Fed.Appx. 11, 15 (2d

Cir.2010) (internal quotation marks omitted) (citing *O'Malley v. N.Y.C. Transit Auth.*, 896 F.2d

704, 709 (2d Cir.1990)); *Edmonds v. Seavey*, No. 08 Civ. 5646(HB), 2009 WL 4404815, at *4

(S.D.N.Y. Dec. 2, 2009).

Rule 11 sanctions are designed to deter baseless filings.  *Arbor Hill Concerned Citizens*

*Neighborhood Ass'n v. County of Albany*, 369 F.3d 91, 97-98 (2d Cir. 2008).  Those sanctions

most commonly include an award of attorneys' fees and costs, although an award is not bound

by this amount.  *Lawrence*, 417 Fed. Appx. at 15 (2d Cir. 2010); *see* also Fed. R. Civ. P. 11(c)(2)

(recognizing district court's authority to award prevailing party its "reasonable expenses,

including attorney's fees").

### B.    Hydrapak's Submitted Fees and Costs are Reasonable and this Court Should Award them

This Court should award Hydrapak's requested fees and costs.  Courts determine a

"presumptively reasonable fee" award by calculating the product of the hours reasonably

expended and a reasonable hourly rate.  *Arbor Hill Concerned Citizens Neighborhood Ass'n v.*

*County of Albany*, 493 F.3d 110 (2d Cir. 2007), *amended on other grounds by*, 522 F.3d 182 (2d

Cir. 2008).  Requests for attorney's fees in this Circuit must be accompanied by

contemporaneous time records that show "for each attorney, the date, the hours expended, and

the nature of the work done." *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711

F.2d 1136, 1148 (2d Cir.1983).

Accordingly, Hydrapak has attached to this petition a comprehensive record of the

attorney's fees and costs it is seeking.[3]  Based on the hours spent by its counsel, and

corresponding rates, the presumptively reasonable fee is $255,764.50.  Hydrapak's costs total

$4,415.24.[4]

---

[3] Hydrapak has attempted to include in this motion its fees and costs through May 24, 2012, one day before this motion was submitted to this Court.  Hydrapak intends to supplement its petition by submitting fees and costs spent on the instant motion that it was unable to collect by the time of filing this motion.  Time spent on fee applications is generally compensable. *See Quaratino v. Tiffany & Co.*, 166 F.3d 422, 428 (2d Cir.1999) (citing *Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1184 (2d Cir.1996); s*ee also Carey*, 711 F.2d at 1148 (finding that prevailing parties are entitled to fees for preparing a fee application).

[4] A portion of these costs are also recoverable under Federal Rule of Civil Procedure 54(d) as the prevailing party.  Hydrapak has reserved arguments about this method of recovery.

DWT 19584212v3 0095884-000001

### 1.    Hydrapak's Counsels' Rates were Reasonable

Before awarding sanctions, Courts must determine whether counsels' rates were reasonable.  A reasonable rate is calculated by considering what a reasonable, paying client would be willing to pay, given the complexity and difficulty involved in the case and the resources required to prosecute the case effectively.  *Simmons v. New York City Trans. Auth.*, 575 F.3d 170, 174 (2d Cir. 2009).  Courts determine fee awards by applying rates charged by attorneys practicing in the district where the court sits.  *Id*. at 172.  Hourly rates should be "current rather than historic." *Reiter v. MTA N.Y.C. Transit Auth.,* 457 F.3d 224, 232 (2d Cir.2006) (citation and quotation marks omitted).  District courts may also assess case-specific considerations, called Johnson Factors.[5]  *Arbor Hill*, 522 F.3d at 186–90.

Here, lead counsel Eric Walters is a partner whose hourly rate during most of the proceeding was $810.  (Walters Dec., ¶ 1-3.)  This rate is reasonable as demonstrated by various authorities.  *See, e.g.,* Mike Mintz, "New Report Finds Law Firm Hourly Billing Rates Continuing to Rise", *Martindale-Hubbell*, May 9, 2012 ("New York City firms raised their

---

For simplification purposes, these costs also include online legal research, although Hydrapak notes that some courts have termed such costs as *attorney fees.  See, e.g., U.S. for Use and Benefit of Evergreen Pipeline Const. Co., Inc. v. Merritt Meridian Const. Corp.*, 95 F.3d 153, 173 (2d Cir. 1996) ("We agree that computer research is merely a substitute for an attorney's time that is compensable under an application for attorneys' fees and is not a separately taxable cost [under Federal Rule of Civil Procedure 54(d)]." )

[5] The Supreme Court has recently expressed its preference for the lodestar approach over the twelve factors.  *Perdue v. Kenny A.* 130 S. Ct. 1662 (U.S. 2010).  For reference, these factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. Ga. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92–93, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989).

-10-

attorney billing rates on average by 12 percent in the last few years, the second highest change in rates among lawyers in various U.S. cities . . . The median billing rate for 2,020 partners in New York City in 2011 was $756 per hour.  The top 25% of those partners' rates was almost $1,000 per hour."); *OZ Mgmt. LP v. Ozdeal Inv. Consultants, Inc.*, 2010 U.S. Dist. LEXIS 138873 (S.D.N.Y. Dec. 6, 2010) (finding that a $730 hourly rate for partners, which was then discounted as a customer courtesy by ten percent, was reasonable, and noting that 2009 AIPLA Report showed that seventy-fifth percentile attorneys surveyed billed an hourly rate of $700).  And the estimates in such authorities do not establish the upper limit on attorney rates.  *Yurman Designs, Inc. v. PAJ, Inc.*, 125 F. Supp. 2d 54, 57 (S.D.N.Y. 2000) ("Indeed, there are decisions within this circuit finding rates above the AIPLA rates to be reasonable."), *citing Howes v. Medical Components, Inc.*, 761 F. Supp. 1193 (E.D. Pa. 1990) (finding a firm's rates reasonable despite fact that they were higher than the highest rate listed in the applicable AIPLA survey).

Lead counsel's experience also demonstrates that his rate was appropriate.  He has practiced for more than 21 years and has focused almost exclusively in the complex area of intellectual property litigation for the past 16 years.  (Walters Dec., ¶ 1); *Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.*, 51 F. Supp. 2d 302, 305 (S.D.N.Y. 1999) ("[s]ome consideration may be given to the experience, reputation and ability of the attorneys, as well as to the difficulty of the issues presented and the amount at stake in the litigation."), *citing Howes v. Medical Components, Inc.*, 761 F. Supp. 1193, 1195-97 (E. D. Pa. 1990) (upward departure from AIPLA survey for intellectual property law practitioners was justified because "a party should be entitled to retain the most competent counsel available, particularly in the highly specialized area of complex patent litigation," and the rates were comparable to those of other New York City firms which handle complex litigation).

-11-

Additionally, the billing rates of other attorneys for Hydrapak were commensurate with their experience.  Partner James Hough, a New York-based partner at Morrison & Foerster LLP who offered his input on significant motions and developments in case from time to time, has been practicing in complex litigation for approximately 26 years.  (Declaration of James Hough, ¶ 1, 2.)  The associates[6] who have worked on this case had hourly rates of $450 and $320 respectively, which is well within the reasonable rate of this district.  *See, e.g., OZ Mgmt. LP*, 2010 U.S. Dist. LEXIS 138873 (noting that a discounted associate rate of $400 was reasonable); *Malletier v. Apex Creative Int'l Corp.*, 687 F. Supp. 2d 347, 361-62 (S.D.N.Y. 2009) ($390.10 per hour was reasonable for an associate at mid-size law firm who specialized in intellectual property law).[7]

Hydrapak also submits that its lead counsel's rate, and the respective rates of his colleagues, was equal to or lower than rates of attorneys employed by firms of comparable size, reputation, and practice profile.[8]  And Johnson factor eight – the amount involved in the case and ***the results obtained*** – suggests that counsels' rates were reasonable because an excellent result was obtained: early summary judgment was granted with a signficantly reduced amount of fees

---

[6] Further discussion of the experience level of these associates is included in the Declaration of Christopher Robinson and Declaration of Sanjay Nangia.  Lead counsel's recent employ at Davis Wright Tremaine LLP necessitated the use of a different associate (and additional nonlawyers) in this litigation.  (Walters Dec., ¶ 2.)

[7] Paralegal and other non-lawyer time is properly included in fee award because such amounts are included in, and the award is meant to compensate, the "work product of an attorney." *United States Football League v. National Football League*, 887 F.2d 408, 415 (2d Cir. 1989).  Hydrapak describes the experience of the nonlawyers involved in this case.  It also notes that the rates of the nonlawyers were commensurate with their respective experience.  (Walters Dec., ¶ 12-13; Robinson Dec., ¶ 4; Hough Dec., ¶ 5-6; Declaration of Jason Callan; Declaration of Allan Patterson); *see, e.g., Yurman Designs*, 125 F. Supp. 2d at 55-58 (approving and awarding $162 hourly rates for paralegals for the year 1999.)

[8] Although lead counsel did not reside in this district, his rate was still on par, if not less than attorneys with similar experience in this district.

-12-

compared to a typical patent infringement case.  In addition, it is notable that this was a case involving two competitors, and Source Vagabond had sought an injunction against the sale and marketing of Hydrapak's allegedly infringing product.  (D.I. 4, *Prayer for Relief*.)

Finally, the fees and rates sought in this application are the rates agreed to and paid by the client.  Here, Hydrapak, a small company, was naturally highly sensitive to its litigation costs, and "[i]ts acceptance of the rates charged is in itself substantial evidence of their reasonableness."  *Yurman Designs, Inc. v. PAJ, Inc.*, 125 F. Supp. 2d 54, 58 (S.D.N.Y. 2000).

### 2.    Hours Expended by Counsel were Reasonable

After determining the appropriate hourly billing rate, the Court calculates the hours reasonably expended. *See Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir.1998).  Hydrapak and its counsel endeavored to keep litigation costs low by focusing the dispute to noninfringement based on a single claim element.  Walters Dec., ¶ 6-7.  Accordingly, counsel took a highly disciplined approach to its research and motions.  And counsel also exercised billing judgment, writing off fees and costs that were not efficient or otherwise might be considered appropriate.  *Id*. at ¶ 10.  Accordingly, Hydrapak's hours expended were reasonable.

To be sure, Hydrapak – out of abundance of caution – has also judiciously reviewed the bills before submitting them to this Court and excluded certain entries that might arguably be considered not directly related to Source Vagabond's frivolous infringement claim.  For instance, Hydrapak has excluded entries (and corresponding fees) for counsel's time incurred in connection with press inquiries relating to the alleged infringement, although these expenses certainly would not have been necessary but-for Source Vagabond's frivolous claims, which Source Vagabond itself publicized through its own press statements.  Hydrapak also excluded entries for time its counsel spent defending against a baseless false marking claim that Plaintiff eventually withdrew (at Hydrapak's urging).  (*Id*. at ¶ 10.).

DWT 19584212v3 0095884-000001

What is more, Hydrapak's fees, on the whole, are substantially lower than the average fees expended by defendants in patent litigation.  Reports dating back a decade indicate that parties in patent litigation have long expected to incur seven and even eight figure legal bills. *See, e.g.,* Megan Barnett, "Patents pending", *U.S. News & World Report*, June 10, 2002 ("Patent lawsuits typically cost each party $1 million, and suits costing $4 million to $10 million are not unheard of."); *see also View Eng'g, Inc. v. Robotic Vision Sys.*, 208 F.3d 981, 986 (Fed. Cir. 2000) (noting that "[a] patent suit can be an expensive proposition"); Walters Dec., ¶ 9 (noting that patent infringement claims commonly cost $2-10 million or more to defend).  Here, Hydrapak seeks fees and costs totaling only around $260,000.  It efficiently litigated this suit, proceeding in a laser-like, focused manner, so as to limit its costs.  Indeed, Hydrapak's fees would have been substantially lower had it not been for Source Vagabond's decision to engage in unnecessary and expensive motion practice, including its broad cross-motion for summary judgment and baseless motion for reconsideration.

## C.    An Award of Hydrapak's Fees and Costs Are Justified

An award of sanctions is especially justified here – where a plaintiff such as Source Vagabond persists with a baseless claim to harm its competitor and raises litigation costs despite repeated and clear notice that its claims were entirely without merit.  *Landmark Chems., SA. v. Merrill Lynch & Co.*, 234 F.R.D. 62, 64 (S.D.N.Y. 2005) (noting that plaintiff bore some responsibility for protracting the proceedings, which justified, in part, the reasonableness of the hours expended by counsel); *Union Planters Bank v. L & J Development Co.*, 115 F.3d 378 (6th Cir. 1997)("a direct payout to the injured party is particularly appropriate for Rule 11(b)(1) violations involving improper motivations"), *citing* Fed. R. Civ. P. 11, Advisory Committee Notes (1993 Amendment); *Phonometrics, Inc. v. Economy Inns of America*, 349 F.3d 1356, 1360 and 1367 (Fed. Cir. 2003) (affirming Rule 11 sanction dismissing case and awarding attorneys'

fees where patentee refused to withdraw claims despite finding of non-infringement in related litigation); *Universal City Studios, Inc. v. Nintendo Co.*, 615 F. Supp. 838, 864-865 (S.D.N.Y. 1985) (Rule 11 sanctions found where offending party brought unsupported claims and viewed corporate litigation as a "profit center"); *see also View Eng'g, Inc. v. Robotic Vision Sys.*, 208 F.3d at 986 ("Defending against baseless claims of infringement subjects the alleged infringer to undue costs -- precisely the scenario Rule 11 contemplates.").

An award of Hydrapak's fees and costs also serves the policy goal of deterrence and the related goal of judicial economy.  Source Vagabond had an opportunity to conduct a reasonable investigation prior to filing the suit, prior to amending its complaint, after receiving letters from Hydrapak, and after either of Hydrapak's Rule 11 motions under the safe harbor provision.  But it did not.  Instead, Source Vagabond pressed forward, filing oppositions to Hydrapak's summary judgment and Rule 11 motions and expanding the costs and complexity of this litigation by filing its own summary judgment motion that significantly increased the number of issues in dispute. It even brought a baseless motion for reconsideration of this Court's Rule 11 order that improperly reargued issues already decided by the Court and relied on new evidence, which, as Judge McMahon has found, was an improper use of a motion for reconsideration.

In sum, this Court should use its broad discretion in enforcing the policy goals of our judicial system and award the submitted fees and costs.  *Lawrence v. Wilder Richman Sec. Corp.*, 417 Fed.Appx. at 15; *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 369 F.3d at 97-98.

DWT 19584212v3 0095884-000001

**IV.     CONCLUSION**

For the foregoing reasons, Hydrapak's motion for fees and costs should be granted.

Dated: May 25, 2012                         Respectfully submitted,

                                            DAVIS WRIGHT TREMAINE LLP


                                            By: _____/s/ Sharon L. Schneier_____
                                                 Sharon L. Schneier
                                                   (sharonschneier@dwt.com)
                                                 1633 Broadway
                                                 New York, NY  10019
                                                 (212) 489-8230


                                                 _____/s/ Eric Walters_____
                                                 Eric Walters (*pro hac vice*)
                                                   (ericwalters@dwt.com)
                                                 505 Montgomery Street, Suite 800
                                                 San Francisco, CA  94111
                                                 (415) 276-4801

                                            *Attorneys for Defendant Hydrapak, Inc.*

-16-

**CERTIFICATE OF SERVICE**

      I, Irving L. Girshman, hereby certify that I caused a true and correct copy of the attached

pleading to be served on counsel of record via the Court's ECF filing system this 25th day of

May, 2012.

                                                    _____/s/Irving L. Girshman_____
                                                       Irving L. Girshman