UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x
SOURCE VAGABOND SYSTEMS LTD.,           :
                                         :   Case No. 11-CIV-5379 (CM) (JLC)
                    Plaintiff,           :
                                         :   ECF CASE
          - against -                    :
                                         :   ELECTRONICALLY FILED
HYDRAPAK, INC.,                          :
                                         :
                    Defendant.           :
---------------------------------------------------------------- x


## DECLARATION OF ERIC S. WALTERS

I, Eric S. Walters, declare as follows:

1.  I am an intellectual property litigation partner in Davis Wright Tremaine LLP's San Francisco office. I received a J.D., *magna cum laude*, from University of Michigan Law School in 1990, where I was the Articles Editor for the Michigan Law Review. I also received a B.S. in Chemical Engineering from the University of Michigan in 1985. I was admitted to the California Bar in January 1991. Before joining Davis Wright Tremaine LLP in April of 2012, I was a partner at Morrison & Foerster LLP's Palo Alto, California office for over thirteen years (March 1999-April 2012). Prior to joining Morrison & Foerster LLP, I worked as an associate at Jackson, Tufts, Cole & Black, LLP (1996-1999), where I was elected to partner in December 1998 (the firm dissolved a few months later and I decided not to officially join the partnership). Before working at Jackson, Tufts, I also was employed by the National Wildlife Federation (1994-1996), Sierra Club Legal Defense Fund (1992-1994), and Howard, Rice, Nemerovski, Canady, Robertson & Falk, PC (1990-1992). During this approximately six-year time period, my practice was comprised primarily of commercial and environmental litigation.

2.  For the past 16 years, my practice has focused on intellectual property disputes, with particular emphasis on patent litigation. I have represented clients in the consumer

products, biotechnology, software, pharmaceutical, semiconductor, medical device, cleantech and other industries.  I am a member of the American Intellectual Property Law Association, the American Bar Association, and the San Francisco Bay Area Intellectual Property Inn of Court.  From approximately 2007-2009, I was Chair of the Palo Alto litigation department of Morrison & Foerster, which at that time had approximately 50 attorneys.  Further details on my background and a summary of some of the cases I have handled are described in my profile on the Davis Wright Tremaine LLP website, a true and correct copy of which is attached as Exhibit A hereto.

3. While employed by Morrison and Foerster LLP, my 2011 standard hourly rate was $810 and my 2012 standard hourly rate was $850.  My standard hourly rate at Morrison & Foerster was based on a variety of factors, including Morrison and Foerster's management review of data about market rates for lawyers based in the San Francisco Bay Area (including Palo Alto) with comparable experience and seniority.  Among the bases for my belief that this hourly rate was reasonable are my own review of studies documenting the average billing rates of partners practicing patent litigation who have practiced for approximately 21 years; my personal experiences with clients involved in patent litigation and their demands and expectations with respect to billing rates; and my experience and discussions with other attorneys employed by firms of comparable size, reputation, and practice profile.

4. Based on my experience and understanding of the legal markets in New York City and San Francisco Bay Area for patent litigation, rates in New York City tend to be equal or higher than those in the Bay Area for attorneys with comparable experience, reputation and practice profile.

5. At Davis Wright Tremaine LLP, my 2012 standard hourly rate is $675.  My standard hourly rate is set based on a variety of factors, including experience and seniority, client relationships, rates offered to clients with a similar profile, and firm leadership's review of data regarding market rates for lawyers with comparable experience and seniority.  In addition to these factors, I established my hourly rate at my new firm lower than what I believe are market rates for my experience and practice.  I did so for a variety of reasons, including to provide an attractive rate to firm clients based in smaller markets that typically have lower billing rates than

in major markets like the Bay Area or New York (Davis Wright is headquartered in Seattle), and also as a means of attracting clients to my new firm for intellectual property litigation.

6. Hydrapak and its counsel exercised diligence in keeping litigation costs low by pursuing defenses that were only reasonably necessary, with special attention to one particular noninfringement argument. We initially sought to persuade Source Vagabond to drop its claims by sending a letter highlighting this gap in its infringement argument. (D.I. 39-1 at 14.) Had Source Vagabond withdrawn its complaint at this stage, the fees and costs incurred which Hydrapak is including in its sanction request ("Requested Fees and Costs") were modest, approximately $25,000. After Source Vagabond declined to withdraw its complaint, on September 16, 2011, we served our Rule 11 motion on Source Vagabond, as provided for by the safe harbor provisions of the Federal Rules of Civil Procedure. At this stage, the Requested Fees and Costs were approximately $55,000.

7. Source Vagabond declined to withdraw its infringement claims. At the initial case management conference on November 3, 2011, Hydrapak sought leave to file an early summary judgment motion on a narrow issue (despite there being numerous grounds to bring a dispositive motion) and a stay of discovery. Judge McMahon granted this request. Hydrapak's motion (D.I. 11) was narrowly tailored, focusing only on one, particularly glaring deficiency in Source Vagabond's infringement argument. At the time this summary judgment motion was filed, Hydrapak had incurred approximately $96,000 in Requested Fees and Costs.

8. After being served with Hydrapak's motion for summary judgment, Source Vagabond still did not withdraw its infringement claims. Instead, it responded to Hydrapak's summary judgment motion by not only opposing it, but also bringing its own cross motion for summary judgment of infringement. (D.I. 18, 21, 22.) Source Vagabond's cross motion referenced numerous additional claim elements that were not previously disputed on summary judgment, and required a substantial amount of additional work. I believe this motion was entirely unnecessary and served only to increase Hydrapak's litigation expenses. The motion was later denied when Judge McMahon granted Hydrapak's summary judgment motion. (D.I. 52 at 7.)

9. The litigation approach Hydrapak employed had the advantage of minimizing the fees and expenses Hydrapak would incur by attempting to keep the range of disputes as narrow as possible. In my experience, fees and costs in patent infringement cases typically range from $2-10 million for cases that proceed to trial, and not infrequently are substantially higher. The approach we proposed to Judge McMahon at the initial case management conference would resolve the case for a fraction of that amount by achieving an early resolution, focused on one deficiency (among many). In addition, a substantial amount of the work in the case was performed by highly skilled associates at a lower billing rate, with appropriate input and supervision by myself and other partners.

10. It is my practice to carefully review bills to write down or write off time that I do not believe has been spent efficiently or productively, or otherwise is not appropriate to bill to the client. I followed that practice in this case, exercising billing judgment to write down or write off time that I did not believe was appropriate to bill Hydrapak. This included, for example, any costs and fees associated with my transition to Davis Wright. For purposes of this motion, I also have re-reviewed the attorney fee bills and deleted entries for certain tasks, including responding to press inquiries and time spent addressing Plaintiff's false marking claim, which was later withdrawn.

11. I believe that my hourly rates and the rates of other attorneys and nonlawyers charged in this matter are reasonable and appropriate based on the type of tasks they completed and the level of experience possessed. For reference, the following is a summary of the hourly rates in this matter to date:

   a. Eric Walters (Partner, Morrison & Foerster LLP) - $810 (2011); $850 (2012)

   b. Eric Walters (Partner, Davis Wright Tremaine LLP) – $675

   c. James Hough (Partner, Morrison & Foerster LLP) - $825 (2011); $875 (2012)

   d. Christopher Robinson (Associate, Morrison & Foerster LLP) - $450 (2011); $530 (2012)

  e.  Sanjay Nangia (Associate, Davis Wright Tremaine LLP) - $320

  f.  Joyce Ng (Paralegal, Morrison & Foerster LLP) - $240

  g.  Lisa Escobar (Paralegal, Morrison & Foerster LLP) - $225

  h.  Joshua Roy (Managing Attorney, Morrison & Foerster LLP) - $180

  i.  Maria Ethel Villegas (Paralegal Supervisor, Morrison & Foerster LLP) - $280

  j.  Allan Patterson (Paralegal, Davis Wright Tremaine LLP) - $235

  k.  Jason Callan (Librarian, Davis Wright Tremaine LLP) - $200

  12. Several of the other attorneys and nonlawyers on this matter have submitted their declarations summarizing their experience and background.  These individuals include James Hough, Christopher Robinson, Sanjay Nangia, Allan Patterson, and Jason Callan.  Joshua Roy's experience is summarized in the declaration of James Hough.  Based on my review of these declarations, my understanding of market billing rates, as well as my own knowledge of the experience and capabilities of these individuals from working with them, I believe that all of these individuals' rates are reasonable given their level of experience and background.

  13. I supervised the activities of three paralegals in Morrison & Foerster LLP's Palo Alto office who assisted me and Christopher Robinson on this matter at various times:  Lisa Escobar, Joyce Ng, and Ethel Villegas.  Based on my experience supervising each of them during my tenure at Morrison & Foerster (both as an attorney whom they assisted in the ordinary course of representing clients and as Chair of the Palo Alto litigation department), I consider Lisa, Joyce, and Ethel to be very well-qualified and highly proficient paralegals, and I believe that their hourly rates charged in this matter are reasonable and appropriate in view of the work they performed and the efficiency with which they carried out their tasks.  To my knowledge, these individuals possess the experience and background identified below.

  a.  Joyce Ng is a paralegal in Morrison & Foerster LLP's Palo Alto office.  Joyce joined Morrison & Foerster LLP in August 2003.  She regularly

        assists with briefs, legal memoranda, and discovery, including cite checking, compiling of exhibits or other documents, and filing/serving.

    b.    Lisa Escobar is a paralegal in Morrison & Foerster LLP's Palo Alto office. Lisa has practiced with Morrison & Foerster LLP for at least 5 years. She regularly assists with briefs and legal memoranda, including cite checking, preparing declarations, and compiling of exhibits or other documents for filing.

    c.    Maria Ethel Villegas is a paralegal supervisor in Morrison & Foerster LLP's Palo Alto office. Ethel joined Morrison & Foerster in July 1999. Among other things, she regularly assists with cite checking briefs or other memoranda. Ethel is highly experienced, and has supervised the other paralegals in Morrison & Foerster's Palo Alto office during the past several years.

14.    Attached hereto as Exhibit B is a true and correct copy of an article authored by Mike Mintz on May 9, 2012 entitled "New Report Finds Law Firm Hourly Billing Rates Continuing to Rise" accessed at http://blog.martindale.com/new-report-finds-law-firm-hourly-billing-rates-continuing-to-rise

15.    Attached hereto as Exhibit C is a true and correct copy of an article authored by Megan Barnett on June 10, 2002 entitled "Patents Pending" in the U.S. News & World Report accessed at http://www.usnews.com/usnews/biztech/articles/020610/archive_021605_print.htm

16.    Attached hereto as Exhibit D is a true and correct copy of the Hydrapak legal bills in this matter, with certain additional deletions and redactions explained below and in the declaration of Christopher L. Robinson and Sanjay M. Nangia.

17.    Under my direction, the following redactions for privilege/attorney work product or confidentiality were made to Exhibit D in anticipation of submitting to this Court.

- Entries identifying specific customers were removed: 8/26/11 (E. Walters); 8/30/11 (E. Walters; 9/9/11 (E. Walters); 9/13/11 (E. Walters); 9/20/11 (E. Walters); 9/21/11 (E. Walters); 9/22/11 (E. Walters); 9/23/11 (E. Walters);

9/23/11 (C. Robinson); 9/25/11 (E. Walters); 9/26/11 (E. Walters); 9/28/11 (E. Walters); 10/7/11 (C. Robinson); 10/7/11 (E. Walters); 10/14/11 (E. Walters); 10/18/11 (E. Walters); 10/20/11 (C. Robinson)

- Attorney-client privileged and attorney work product information relating to risks of proceeding with certain motion strategy: 10/10/11 (E. Walters)

- Attorney-client privileged and attorney work product information relating to development of Hydrapak product:  10/13/11 (C. Robinson)

- Attorney-client privileged and attorney work product information relating to potential strategies for recovering attorneys' fees:  4/11/12 (J. Hough); 4/11/12 (C. Robinson); 4/12/11 (C. Robinson)

- Attorney-client privileged and attorney work product information relating to certain searches that were conducted: 9/8/11 (M. Gourhan), 9/8/11 (E. Walters)

18. In connection with the request for the recovery of fees in this motion, I have also made the reductions of time identified in the list below.  Where a task was part of a block bill entry, I have requested that the individuals involved to estimate the amount of time expended on the task.  I have reviewed these estimates based on my own experience with this case and believe these estimates to be accurate and have reduced the time and associated fee request accordingly.  Where I was the individual who billed time to the task and it was part of a block bill entry, I adjusted the entry based on my best recollection of the time that task took.

- Plaintiff's False Marking Claim: 9/1/11 (C. Robinson), 6.5 hrs; 9/16/11 (E. Walters), 0.25

- Public relations and press inquiries: 4/11/12 (C. Robinson), 0.25 hrs; 4/13/12 (E. Walters), 0.25

- Assisting in transition between law firms: 4/19/12 (J. Hough), 0.5 hrs

- Preparing for appeal:  5/14/12 (E. Walters) 0.4 hrs; 5/15/12 (E. Walters) 0.2 hrs; 5/17/12 (E. Walters) 0.3 hrs; 5/18/12 (S. Nangia) 1.1 hrs; 5/24/11 (E. Walters) 0.5 hrs.

- Searching for certain prior art: 9/8/11 (M. Gourhan), 0.75 hrs

- Development of Hydrapak product:  10/13/11 (C. Robinson), 0.5 hrs

- Shipping cost unrelated to this matter: 4/27/12,  $17.37

19. Attached hereto as Exhibit E is a true and correct copy of the Rule 11 Motion served by Hydrapak on September 16, 2011.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on the 25th day of May, 2012.

Dated: May 25, 2012

                                              /s/Eric S. Walters
                                              Eric S. Walters