USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: June 5, 2014

# United States Court of Appeals
# for the Federal Circuit

_____

**SOURCE VAGABOND SYSTEMS LTD.,**
*Plaintiff-Appellant,*

**AND**

**PEARL COHEN ZEDEK LATZER LLP,**
*Sanctioned Party-Appellant,*

**v.**

**HYDRAPAK, INC.,**
*Defendant-Appellee.*

_____

2013-1270, -1387

_____

Appeals from the United States District Court for the Southern District of New York in No. 11-CV-5379, Judge Colleen McMahon.

_____

Decided: June 5, 2014

_____

WILLIAM G. JENKS, Jenks IP Law, PLLC, of Washington, DC, argued for plaintiff-appellant and sanctioned party-appellant. With him on the brief was GUY YONAY, Pearl Cohen Zedek Latzer, LLP, of New York, New York.

ERIC S. WALTERS, Davis Wright Tremaine LLP, of San Francisco, California, argued for defendant-appellee. With him on the brief was ERICA D. WILSON. Of counsel was BENJAMIN J. BYER, of Seattle, Washington.

———————————

Before MOORE, REYNA, and WALLACH, *Circuit Judges.*

WALLACH, *Circuit Judge.*

Source Vagabond Systems, Ltd., Pearl Cohen Zedek Latzer LLP, Guy Yonay, and Clyde Shuman (collectively, "Source" or "Appellants") appeal the decision of the district court sanctioning Source under Federal Rule of Civil Procedure 11 ("Rule 11") for bringing a frivolous patent infringement suit against Hydrapak, Inc. ("Hydrapak"). For the reasons set forth below, this court affirms.

## BACKGROUND

Source manufactures water reservoirs in which drinking water can be stored inside backpacks for use in outdoor activities. Source is the assignee of U.S. Patent No. 7,648,276 (the "'276 patent"), which covers Source's Widepac reservoir.

Guy Yonay and Clyde Shuman are partners in the law firm Pearl Cohen Zedek Latzer LLP. Prior to the present action, Mr. Yonay prosecuted the '276 patent application. In the underlying district court litigation, Mr. Yonay signed the original Complaint on behalf of Source, and Mr. Shuman signed the Amended Complaint.

## I. The '276 Patent

The '276 patent, in which Yoram Gill is the named inventor, relates to flexible hydration reservoirs and focuses specifically on the sealing mechanisms for reservoirs. The reservoir includes a hermetic seal to prevent leakage and a large opening to facilitate the filling and cleaning of the

container. '276 patent col. 6 ll. 17–24.   The only claim at issue is claim 1, reproduced below:

> 1. A sealable flexible liquid container system comprising:
>
> a flexible liquid container having a cavity for receiving liquids, said cavity formed of two films having the majority of their perimeter fused, and a portion of the perimeter unfused so as to present a lateral opening for filling the container with liquids, and a liquid dispensing outlet;
>
> *a rod* having a first end and a second end, fixedly attached to the container laterally across the lateral opening of the flexible container so that a portion of the container adjacent the lateral opening can be folded over the rod and substantially overlap an adjacent portion of the container; and
>
> *a sealer* comprising an elongated rigid member having two opposite sides along which a hollow cavity is extended with a longitudinal slot wherein said slot is adapted to accommodate said two films, wherein the sealer is provided *with an opening* on at least one of the opposite sides with a broadening *for inserting an end of the rod into the cavity when the portion of the container is folded over the rod into the hollow passage, the slot being narrower than the diameter of the rod, so that the sealer is only to be slidingly mounted sideways over the rod*.

*Id.* col. 10. ll. 20–42 (emphases added).

The closure disclosed in the '276 patent includes a rod, over which the top portion of the container is folded, and a sealer that is slidingly mounted over the rod when the container is folded over the rod.   *Id.* col. 7 ll. 20–28. Figures 2, 3A, and 3B, reproduced below, are illustrative.



*Id.* figs. 2, 3A, 3B. After water fills the container ((10) in Figures 3A and 3B), the opening has to be hermetically sealed. *Id.* col. 7 ll. 1–2. Figure 2 illustrates an isometric view of the sealer. *Id.* col. 7 ll. 3–5.

Figure 3A depicts the water container (10) that is folded so that extension (16) is wrapped over the opening and a fold (62) is formed. *Id.* col. 7 ll. 20–21. Rod (60) protrudes from the hollow cylinder (52) in order to ease the insertion of the fold between the rod and the cylinder. *Id.* col. 7 ll. 28–30. "Sealer (50) cannot be removed from the fold unless it slides in an opposite direction to the direction it has been put on since *slot (54) is narrower than the diameter of rod (60)*." *Id.* col. 7 ll. 33–36 (emphasis added). Figure 3A shows sealer (50) halfway put onto fold (62). *Id.* col. 7 ll. 36–37.

SOURCE VAGABOND SYSTEMS v. HYDRAPAK, INC.                5

Figure 3B illustrates the hydration system completely closed by the sealer.  *Id.* col. 7 ll. 38–40.  When sealer (50) is fully inserted and container (10) is closed, water (28) from the container "cannot leak even if the container is oriented upside down so that the fold is in the bottom of the container. . . . The container is thus hermetically sealable if the slot in the hollow cylinder is slightly wider than twice the thickness of the container."  *Id.* col. 7 ll. 45–52.

The specification explains: "[w]hen the portion of the container provided with the lateral opening is folded over the rod, substantially overlapping an adjacent portion of the container and the sealer is slidingly mounted over the folded portion of the container, liquid is prevented from leaking out of the container through the lateral opening." *Id.* at [57].

## II. The Accused Product—Hydrapak's Reversible Reservoir II

Hydrapak also manufactures a flexible hydration reservoir called the Reversible Reservoir II, the accused product in this case.  The Reversible Reservoir II has a sealing member, called a "slider," with an opening or gap across its long axis.  The slider attaches to six elements, called "catches," located on the outside of two plastic lips that run along each side of the water reservoir's mouth. The catches guide the slider along the container's plastic lips, thereby locking the slider in place, preventing detachment.  One of the lips "contains a small protrusion, called a 'lip bulge,' on its interior proximal end."  J.A. 189. The following pictures of the Reversible Reservoir depict the "lip bulges":

 

J.A. 189. The following two pictures depict the catches:

 

J.A. 190.

## III. Proceedings

On August 2, 2011, Source sued Hydrapak for, inter alia, infringing "at least claim 1 of the '276 patent, either literally, or under the doctrine of equivalents." J.A. 78. On September 16, 2011, Hydrapak served a sanctions motion under Rule 11. On October 6, 2011, Source filed an Amended Complaint, and on October 12, 2011, Hydrapak served an amended Rule 11 motion.[1]

In late 2011, the parties filed cross motions for summary judgment with respect to infringement. Source argued the claim limitation "the slot being narrower than the diameter of the rod, so that the sealer is only to be slidingly mounted sideways over the rod" should be construed to mean "*the slot is narrower than the diameter of the rod together with the container folded over it*, so that the sealer is only to be slidingly mounted sideways over

---

[1] Rule 11 includes a "safe harbor" period, which provides that, before a motion for sanctions is filed, the party against whom the sanctions will be sought must be notified of the potential Rule 11 violation and given a twenty-one-day period to withdraw the offending claim. Fed. R. Civ. P. 11(c)(2). Source declined to withdraw its Amended Complaint.

the rod *and the container*." *Source Vagabond Sys. Ltd. v. Hydrapak, Inc.*, No. 11 Cv. 5379 (S.D.N.Y. Apr. 11, 2012) ("Dist. Ct. Op.") (J.A. 4).

The district court granted Hydrapak's motions for summary judgment and Rule 11 sanctions on April 11, 2012. Regarding claim construction, the court said there was "nothing complicated or technical" about the claim limitation "slot being narrower than the diameter of the rod," and that none of the words of this limitation "requires definition or interpretation beyond its plain and ordinary meaning." J.A. 4. Accordingly, the court gave "slot being narrower than the diameter of the rod" its "plain and ordinary meaning." J.A. 4. The district court stated that Source's proposed claim interpretation "violates all the relevant canons of claim construction" and that even under Source's own construction, Hydrapak did not infringe. J.A. 8–9. It also found the literal infringement claim "lacked evidentiary support no matter how the claim was construed" and "the difference is apparent to the naked eye, and the tape measure leaves no room for doubt." J.A. 8. Specifically, the district court determined that in Hydrapak's products the slot is larger than the diameter of the rod, even under Source's proposed construction.

A determination on the "amount of sanctions" was referred to Magistrate Judge James L. Cott. Hydrapak's final request for attorney's fees and costs was $294,636.91, consisting of $289,532.74 in attorney's fees and $5,104.17 in costs. Neither party made any distinction between Source and its counsel in its briefs.

On May 11, 2012, Source filed two notices of appeal: one addressing the district court's denial of Source's motion for reconsideration of the Rule 11 Order and the second addressing the district court's merits decision. Source subsequently filed a motion terminating the

motion for reconsideration appeal. The appeal on the merits of the district court's decision moved forward.

On January 11, 2013, this court summarily affirmed the district court's summary judgment decision and denied Hydrapak's motion for sanctions for a frivolous appeal.

Parallel with Source's merits appeal to this court, Magistrate Judge Cott determined the sanctions were based on two interrelated violations of Rule 11: first, "Source made frivolous legal claims in its submissions to the Court, in violation of Rule 11(b)(2); and [second,] Source failed to conduct an adequate investigation before filing this lawsuit, in violation of Rule 11(b)(3)." J.A. 19. He recommended Source's counsel pay $187,308.65 in partial attorney's fees, but that Source not be sanctioned.[2] Magistrate Judge Cott found the recommended sanction was "consistent with the deterrence purpose of the Rule." J.A. 45–46. His order warned Appellants in bold letters that: "Failure to file objections within fourteen (14) days will result in a waiver of objections and will preclude appellate review." J.A. 47. Appellants did not file any objection to Magistrate Judge Cott's report.

---

[2]   The district court explained:

Given counsel's sole responsibility, as a matter of law, for the violations of Rule 11(b)(2), and counsel's additional responsibility for the failure to investigate under Rule 11(b)(3), I recommend that Yonay and Shuman be held responsible for any monetary sanction. I further recommend Yonay and Shuman's law firm, Pearl Cohen Zedek Latzer LLP be held jointly and severally liable in accordance with Fed. R. Civ. P. 11(c)(1).

J.A. 24.

The district court adopted Magistrate Judge Cott's calculation of sanctions. Hydrapak argued it should receive attorney's fees for defending against the (terminated) reconsideration motion. The district court agreed and determined the fees incurred in opposing Source's motion for Reconsideration should be included in the requested sanction, raising the sanction amount to $200,054.00.

Source timely appealed the district court's sanctions determination and this court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(1) (2012).

DISCUSSION

I. Standard of Review

In determining whether Rule 11 sanctions are warranted, the Federal Circuit applies the law of the regional circuit. *Antonious v. Spalding & Evenflo Cos. Inc.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002). In the Second Circuit, "liability for Rule 11 violations 'requires only a showing of objective unreasonableness on the part of the attorney or client signing the papers.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 150 (2d Cir. 2009) (quoting *Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 96 (2d Cir. 1997)). All aspects of a district court's imposition of Rule 11 sanctions are reviewed under an abuse of discretion standard. *Caisse Nationale De Credit Agricole-CNCA v. Valcorp, Inc.*, 28 F.3d 259, 264 (2d Cir. 1994); *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990). An "abuse of discretion occurs when a district court base[s] its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or render[s] a decision that cannot be located within the range of permissible decisions." *Kiobel v. Millson*, 592 F.3d 78, 81 (2d Cir. 2010) (internal quotation marks and citation omitted).

In patent lawsuits, "[d]efending against baseless claims of infringement subjects the alleged infringer to undue costs—precisely the scenario Rule 11 contemplates." *View Eng'g, Inc. v. Robotic Vision Sys.*, 208 F.3d 981, 986 (Fed. Cir. 2000). Rule 11(b)(2) mandates that, in any filing, counsel certifies he or she has made a reasonable inquiry that "the claims, defenses, and other legal contentions are warranted by existing law." Fed. R. Civ. P. 11. Rule 11(b)(3) also requires that counsel certify they have made a reasonable inquiry into whether their "factual contentions have evidentiary support." *Id.*; *see also Int'l Shipping Co.*, *S.A. v. Hydra Offshore, Inc.*, 875 F.2d 388, 390 (2d Cir. 1989) (Sanctions are appropriate where an attorney fails to "conduct a reasonable inquiry into the viability of a pleading before it [was] signed." (internal quotation marks and citation omitted)). Sanctions may be imposed for counsel's failure to make a reasonable inquiry into either the facts or the law. *Caisse Nationale De Credit Agricole-CNCA*, 28 F.3d at 264.

## II. Analysis

We turn to the legal and factual issues that formed the bases of the district court's sanctions determination. The district court found that Source had an obligation to demonstrate "exactly why it believed *before filing the claim* that it had a reasonable chance of proving infringement." J.A. 7–8. The court ultimately found Source could not demonstrate this belief as it related to either literal infringement or the doctrine of equivalents.

The district court found claim construction of the slot/rod limitation "lies at the heart of this lawsuit." J.A. 4. It determined that the claim limitation stating the "slot being narrower than the diameter of the rod" required that the slot is narrower than the rod without including the portion of the container folded over the rod. That construction was not disturbed by this court. J.A. 1639–40.

### A. Claim Construction

Source argues its proposed claim construction was reasonable and not precluded by the plain language of the claim when read in context. Hydrapak counters that Source did not "look to the words" of claim 1 and inserted additional words to change the unambiguous meaning of the claim.

A basic principle of claim construction is that "the words of a claim are generally given their ordinary and customary meaning." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotation marks and citation omitted). Thus, "a claim construction analysis must begin and remain centered on the claim language itself, for that is the language the patentee has chosen to particularly point[ ] out and distinctly claim[ ] the subject matter which the patentee regards as his invention." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004) (internal quotation marks and citation omitted); *see also White v. Dunbar*, 119 U.S. 47, 52 (1886) (explaining "[t]he claim is a statutory requirement, prescribed for the very purpose of making the patentee define precisely what his invention is; and it is unjust to the public . . . to construe it in a manner different from the plain import of its terms."). "The claims, of course, do not stand alone." *Phillips*, 415 F.3d at 1315. "Rather, they are part of a fully integrated written instrument, consisting principally of a specification that concludes with the claims." *Id.* (internal quotation marks and citation omitted). "For that reason, claims must be read in view of the specification, of which they are a part." *Id.* (internal quotations marks and citation omitted).

Source argued to the district court that the slot/rod limitation (i.e., "the slot being narrower than the diameter of the rod, so that the sealer is only to be slidingly mounted sideways over the rod") should be construed to mean

"the slot is narrower than the diameter of the rod together with the container folded over it, so that the sealer is only to be slidingly mounted sideways over the rod *and the container*." J.A. 354 (emphasis added). Source contends it based its construction on the specification and the "context of claim 1 of the '276 patent as a whole," J.A. 355, and "there is no bar to proposing a claim construction that only adds words to the claim being construed." Reply 6.

Source added words to the actual claim language, thus changing the relevant comparison from the slot to the diameter of the rod to the slot to the diameter of the rod added to the thickness of the container folded over it. Instead of looking to the words themselves, Source added language without support from the specification or prosecution history, altering otherwise unambiguous claim language, a practice this court has repeatedly rejected. *See Phillips*, 415 F.3d at 1312; *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("[W]e look to the words of the claims themselves . . . to define the scope of the patented invention."); *see also McCarty v. Lehigh Val. R.R. Co.*, 160 U.S. 110, 116 (1895) ("[I]f we once begin to include elements not mentioned in the claim, in order to limit such claim . . . we should never know where to stop."). As the district court said, "an 'analysis' that adds words to the claim language [without support in the intrinsic evidence] in order to support a claim of infringement" does not follow "'standard canons of claim construction.'" J.A. 9.

Additionally, the surrounding claim language demonstrates that the "the slot," "the rod, and "the portion of the container . . . folded over the rod" are distinct from each other. The claim language does not compare the size of the slot to the size of the rod *together* with the folded over container. Source had the ability to draft the claim that way but did not. It cannot correct that failure by adding words to otherwise unambiguous claim language.

Source conclusorily argues that the claim language is ambiguous, but it did not make that contention at the district court and, here, does not explain what terms are ambiguous or how.  Likewise, Source does not, and could not, argue that the patentee acted as his own lexicographer.  There is no indication or reference in the specification that "rod" means "rod-plus-container."

In any event, the district court examined the specification and held that Source's proposed claim construction "contradicts the specification, which states: '[s]ealer 50 cannot be removed from the fold unless it slides in an opposite direction to the direction it has been put on *since slot 54 is narrower than the diameter of rod 60.*'"  J.A. 5 (quoting '276 patent col. 7 ll. 33–36).  Source contends this part of the specification does not render its arguments frivolous because the language in the specification "does not address the relative sizes of the rod, slot, and container film, but rather the relative width of the rod and the slot after the container is folded over the rod."  Appellants' Br. 30.

Source further contends the section quoted by the district court refers to Figure 3A and the "relative sizes shown in the drawings rebut the Court's finding that Source's claim construction was objectively unreasonable." *Id.* at 33.  However, "patent drawings do not define the precise proportions of the elements depicted and may not be relied on to show particular sizes if the specification is completely silent on the issue."  *Hockerson-Halberstadt, Inc. v. Avia Grp. Int'l, Inc.*, 222 F.3d 951, 956 (Fed. Cir. 2000).  The district court considered the drawings in the specification and correctly determined that Source's proposed construction was contradicted by the patent's specification.

"In addition to consulting the specification, . . . a court should also consider the patent's prosecution history, if it is in evidence."  *Phillips*, 415 F.3d at 1317 (internal

quotation marks and citation omitted). "[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.* Here, the prosecution of the '276 patent supports the plain meaning of the claim language. Before claim 1 was amended, the referenced slot did not have an upper size limit.[3] In response to an invalidity rejection, the patentee amended claim 1 to require a "slot being narrower than the diameter of the rod." J.A. 320. The prosecution history is thus consistent with the claim language and the specification, and further demonstrates that Source's claim construction

---

[3] Initially, claim 1 identified a lower size limit: "wherein the slot is *not narrower* than the total thickness of the folded portion of the container and the adjacent portion when inserted through the slot" but identified no upper size limit. *See* J.A. 279 (emphasis added). In response to an obviousness rejection over Dikeman, a prior art reference, Source added to the claim language: "the distance between the lips allow[] the sealer to be mounted only slidingly sideways over the rod." J.A. 300. However, the Examiner found this amendment insufficient as failing to comply with the written description requirement, nonenabling, and indefinite. Thus, Source amended a final time and replaced the phrases "substantially parallel lips" and "distance between the lips allowing the sealer only to be mounted slidingly sideways over the rod" with the phrase "slot being narrower than the diameter of the rod so that the sealer [is] to be mounted only slidingly sideways over the rod." J.A. 320. This explicitly narrowed the claim by excluding any device in which the slot is not narrower than the diameter of the rod.

is unreasonable and that the claims do not cover products with a slot wider than the diameter of the rod.

Finally, Source argues that Hydrapak's proposed construction "would render the entirety of claim 1 nonsensical," J.A 356, and "Source read[s] the claim to avoid a nonsensical result." Appellants' Br. 35. However, Source should have known it could not prevail because a court may not rewrite a claim even if giving a disputed claim its plain meaning would lead to a "nonsensical result." *See Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1373 (Fed. Cir. 2004) (explaining "courts may not redraft claims, whether to make them operable or to sustain their validity" even if the plain meaning of the claim leads to "a nonsensical result"); *Generation II Orthotics Inc. v. Med. Tech. Inc.*, 263 F.3d 1356, 1365 (Fed. Cir. 2001) ("[C]laims can only be construed to preserve their validity where the proposed claim construction is 'practicable,' is based on sound claim construction principles, and does not revise or ignore the explicit language of the claims.").

Source also cites several cases to argue it is proper to rely on the *purpose* of the invention in construing the claim. Appellants' Br. 35–36. The district court properly determined that "claim construction is a function of the words of the claim not the 'purpose' of the invention," and that Source's construction "violates nearly every tenet of claim construction and amounts to a wholesale judicial rewriting of the claim." J.A. 4; *see also Cohesive Techs. Inc. v. Waters Corp.*, 543 F.3d 1351, 1368 (Fed. Cir. 2008) ("To be clear, it is the purpose of the *limitation* in the claimed invention—not the purpose of the invention itself—that is relevant."). Source was required to "perform an objective evaluation of the claim terms" to satisfy its obligation to conduct a reasonable pre-suit evaluation. *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1329 (Fed. Cir. 2011). By proposing a definition that ignores the canons of claim construction, Source did not meet that standard. The district court did not abuse its discretion

in imposing Rule 11(b)(2) sanctions based upon Source's frivolous claim construction arguments.

### B. Infringement

### i. Literal Infringement

Source argues that Hydrapak's "sealing member" "literally include[ed]" a "slot narrower than the diameter of the rod, so that the sealer is only to be slidingly mounted sideways over the rod." J.A. 360. The district court did not abuse its discretion in finding that, even under Source's claim construction, there was no reasonable basis for alleging Hydrapak's Reversible Reservoir II literally infringed.

The district court found that Source's opposition to the Rule 11 motion did "not even contain any product measurement that would tend to show whether Hydrapak's products infringe under any version of claim construction!" J.A. 8. Mr. Yonay's declaration in opposition to the motion for sanctions lacked any analysis or product measurement and calculation that would tend to support a finding that he performed a sufficient analysis supporting a reasonable belief of literal infringement, even under Source's own proposed claim construction. *See* J.A. 765. The declaration simply restated the claim construction arguments and asserted the conclusory statement that he "analyzed the sample to ascertain whether or not it infringes at least claim 1 of [the '276 patent] by comparing every element of claim 1, as construed, to the Reversible Reservoir II." J.A. 765. A "patent holder, if challenged, must be prepared to demonstrate to both the court and the alleged infringer exactly why it believed before filing the claim that it had a reasonable chance of proving infringement." *View Eng'g*, 208 F.3d at 986. Source was not prepared and failed to offer any legitimate evidence supporting a reasonable belief that it had a meritorious direct infringement claim.

On appeal, Source also argues the district court abused its discretion because it did not address Hydrapak's product's "catches" "either on the merits or with respect to the reasonableness of Source's argument." Appellants' Br. 41. Hydrapak counters that the argument is baseless because the catches are not part of Hydrapak's container itself. As Source recognizes, *see* J.A. 406, the catches are "discrete elements" that are attached to "plastic lips" that in turn are "attached to the outside of the container." J.A. 406. Additionally, the catches do not go onto the portion of the container that is folded over the rod, as is required by Source's proposed claim construction, which combines the diameter of the rod and thickness of the "container folded over it." J.A. 406. The district court explicitly recognized Hydrapak's product could not literally infringe, stating: "In both of defendant's products, the slot is still several millimeters larger than the diameter of the "rod," (i.e., the rod with the portion of the container that is folded over it). So a finding of literal infringement is impossible." J.A. 6. In opposing Hydrapak's Rule 11 motion, Source did not explain why it believed, prior to filing suit, that the Reversible Reservoir II literally infringed. Source also failed to submit any evidence demonstrating pre-suit analysis that reasonably concluded there was literal infringement because the thickness of the lips and catches should be considered part of the thickness of "the folded over container."

Since Source's claim construction is clearly inadequate, and, indeed, the literal infringement claim "lacked evidentiary support no matter how the claim was construed," J.A. 8, the district court did not abuse its discretion in imposing Rule 11 sanctions.

### ii. Doctrine of Equivalents

Source argues its doctrine of equivalents arguments were objectively reasonable. Source's only mention of the doctrine of equivalents in its Opposition to the Rule 11

motion was the assertion that Hydrapak infringed "either literally or under the doctrine of equivalents." J.A. 744, 766. Source failed to offer any legal or factual support for this conclusory statement. *See* J.A. 9 ("[N]either the attorney's affidavit nor plaintiff's 'pre-suit analysis' . . . [ever] mentioned, let alone analyzed, how Hydrapak's product infringed Source's patent under the doctrine of equivalents."). Counsel was obligated to come forward with a showing of exactly why, prior to filing suit, they believed their claim of infringement under the doctrine of equivalents was reasonable. *See View Eng'g*, 208 F.3d at 986. Source did not comply with this requirement below. Under these circumstances, the district court did not abuse its discretion in finding a Rule 11 violation.

CONCLUSION

Source's claim construction and infringement positions were untenable. Source did not make reasonable arguments and did not make a reasonable inquiry into its claims against Hydrapak. Because of the specific circumstances of this case, this court affirms the district court's Orders imposing $200,054.00 in Rule 11 sanctions against Source.

**AFFIRMED**